CLEMENTINE PEELER ET AL. *v.* C. G. PEELER.

1. DESCENT OF EXEMPT PROPERTY. *Code* 1880, § 1277. *" Children."* *Does not include grandchildren.*

     The phrase " *children* of the decedent" in § 1277, code 1880, regulating the descent of exempt property, cannot be construed to include grandchildren. If there be no children, the widow of the exemptionist is entitled to the homestead as against his grandchildren, although they were at the time of his death dependent members of his family.

2. CONSTRUCTION OF STATUTES. *Intent.* *Meaning of words.*

     Words employed in a statute are to be taken in their ordinary and obvious signification, unless it is clearly necessary to enlarge or modify this in order to effect the plain intent of the legislature.

3. SUPREME COURT. *Correct decree not reversed to meet new case.*

     This court will not reverse a decree manifestly correct, in order merely to open the way for the presentation of another case on new facts, even though minors are parties litigant.

FROM the chancery court of Warren county.

HON. LAUCH MCLAURIN, Chancellor.

The facts are fully stated in the opinion.

*Birchett & Shelton,* for appellants.

The only question in the case is who shall have the homestead, the widow or the children? This depends upon a construction of § 1277, code 1880. The homestead is an estate created by statute. An examination of all the statutes beginning with Hutchinson's code down to the code of 1880 will show that the tendency of legislation has been uniformly towards making the homestead descend as other property, and vesting in the same persons who would inherit the rest of the property an estate therein as tenants in common, free from the decedent's debts. Under the statute of descent

this court has held that grandchildren are so completely on a level with children that a child of a sister of the whole blood will inherit in preference to a sister of half blood, in face of the provision of the statute that there shall be no distinction between children of the whole and half blood, except that children of the whole blood are to be preferred to children of the half blood in the same degree. *Scott* v. *Terry*, 37 Miss. 65.

The manifest object of the statute is to provide for the exemptionist and his family during his lifetime and for those who are dependent upon him after his death. There can be no doubt that grandchildren constituting a part of the family dependent upon the exemptionist for support are as much members of his family as his own children. The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the legislature had in view. Endlich on Interpretation of Statutes, § 73. Where the object of the statute was the distribution of an intestate's estate, the term children should be construed to include grandchildren. Eschelman's Appeal, 74 Pa. St. 42. So if grandchildren are included in the equity of a statute providing for children of a decedent, the word children will be held to include grandchildren. *Walton* v. *Cotton*, 19 How. (U. S.) 355.

The statute of descent having placed grandchildren on a level with children, this section which forms a part of the statute must furnish the rule of descent for the homestead in all cases where the children of the exemptionist are dead the grandchildren constitute his family ; otherwise the object of the statute would be defeated.

*Dabney & McCabe*, for appellees.

Even if the applicants were a part of the family of Richmond Peeler at the time of his death, that would not give them the rights which they claim. Under § 1277, the person entitled to exempt property owned by the decedent at the time of his death do not take the same by virtue of being members of his family, but by virtue of their relationship to the decedent. The word children cannot be construed to mean grandchildren. If so, the legislature

would have substituted the word heirs for the word children. The word children is usually confined to immediate descendants. It does not include grandchildren or more remote descendants. 3 Am. & Eng. Encyc. of Law, 230–232.

The fact that the widow at the time of the decedent's death owned in her own right a place of residence worth more than the exempt realty, if admitted to be true, cannot help the appellants. They are again met with the fact that the statute limits the right to the homestead in such case to the children of the decedent and not to his grandchildren.

WOODS, C. J., delivered the opinion of the court.

Richmond Peeler died seised and possessed of a homestead and valuable plantation in Warren county. He had been twice married. By his first marriage he had one son, who died during the lifetime of the father. This son left surviving him four children, the appellants herein. By the second marriage he had no children, and the second wife is the appellee. Richmond Peeler and the second wife were living in the homestead on the plantation at the date of his death. His surviving widow, the appellee, was the owner, at the time of her husband's death, of a residence worth $2000, or more.

The widow filed her petition in Warren chancery court praying the allotment to her of the exempt real estate of her late husband, and praying partition of the remaining realty, equally, between herself and the four grandchildren above referred to.

The grandchildren answer, and make their answer a cross-petition, by which they admit that they and the widow are tenants in common of all the realty, except the homestead. As to the homestead they assert that they are entitled to the whole of the exempt homestead, and deny that the widow is entitled to any part thereof.

They aver that James Peeler, their father, at the date of his death, together with his wife and his four children, the appellants, was living with his father, Richmond Peeler, and his, James Peeler's, mother, who was then living, and that they were living as one family, although they occupied a separate house: that after

the death of James Peeler, his wife and children, the appellants, lived with Richmond Peeler and his first wife, James' mother, as members of their family, though continuing to occupy the house used by James and his family in his lifetime, and which said house was only a short distance from the house occupied by Richmond Peeler and wife : that after the death of the first wife of Richmond Peeler, appellants and their mother continued to live and remain as a part of Richmond Peeler's family, and so continued to live after his second marriage, and up to the day of his death : that Richmond Peeler treated appellants as members of his family, making no distinction between them and appellee : that it was understood between Richmond Peeler and the mother of appellants, after James Peeler's death, that appellants were to be supported and educated by Richmond Peeler, at his own expense, and were to be treated by him as part of his own family, and that this understanding was fully complied with by Richmond Peeler until his death : that Richmond Peeler had no other family than appellants and appellee for some years before his death.

To this cross-petition the appellee demurred, and said demurrer having been by the court sustained, appellants bring the case here, the court being of opinion that an appeal was proper to settle the principles of law involved.

Section 1277 of the code of 1880 declares, that " the property exempt by law from sale under execution or attachment, shall, on the death of the husband or wife owning it, descend to the survivor of them, and the children of the decedent, as tenants in common ; and if there shall be no children of the decedent, to the surviving wife or husband ; and if there be no such survivor, to the children of the deceased owner. If there be neither a surviving wife nor husband, nor children of the decedent, the exempt property shall be liable for the debts of the decedent, and be disposed of as other property of such decedent. But when the surviving wife or husband shall own a place of residence equal in value to the homestead of the decedent, and the deceased husband or wife shall have surviving no children of the last marriage, but shall have children of a former marriage, the homestead of such decedent shall not descend

to the surviving husband or wife, but shall descend to the surviving children of the decedent by such former marriage, as other property."

The case is determinable by a proper construction of the section of the code.

What was the purpose of the legislature in framing this statute? What does the word *children,* as therein employed, mean?

It is earnestly and strongly contended by counsel for appellants that the manifest object of the section is to provide for the family of the exemptionist, and those dependent upon him, after his death; and that grandchildren living with an exemptionist and constituting a part of his household, and dependent upon him for support, are as much members of his family as his own children.

The unsoundness of the position will be made manifest when it is considered, and the consequences to which it will lead are attentively regarded. If the manifest purpose of the section is to provide for the family of the decedent, instead of the widow and children, the most casual observation will show the length to which this rule will conduct. The family is composed of what members? Is there included in the word all who are members of the household, and dependent upon the head of it? It is defined by the lexicographers as follows: 1. Persons who collectively live together in a house, or under one head—a household. 2. Those who are of the same lineage, or who are descended from one common progenitor—a race, or tribe—a house. These definitions may be relied upon as sufficiently accurate for our adoption, and any attempt to make the section mean to embrace provision for a family must at once appear unreasonable and futile. To say that the meaning of the statute is to provide for a man's widow and family will so enlarge its operations as to make not only children the objects of its care, but all others living together under one roof, or under one head. With this door of liberal construction flung wide open, where is the authority to again shut it in the face of any one living in the house of the decedent and belonging to his lineage? The rule of construction contended for cannot be safe or sound, for it

necessarily goes far beyond the degree of kinship at which counsel would draw the line.

It would appear that the language of the statute, taken in its simple and obvious import, was confined to the immediate descendants of the exemptionist and his widow, and not to his household generally : to his children, and not to his grandchildren or great-grandchildren, or others even more remotely related by blood.

In the light of authority, too, the interpretation attempted to be maintained by counsel cannot, we think, be supported. We have carefully examined the two cases relied upon by counsel, and think the case in 74 Penn., *Eshleman's Appeal*, p. 42, is distinguishable from the case at bar. In that case a grandchild, whose father was deceased, had advancements from the grandfather, and on settlement of the grandfather's estate it was held that, under a statute providing that children of an intestate should be charged with advancements, the grandchild must be held chargeable, the court holding that as the object of the statute was to equalize the distribution of the estate of intestates, the term children should be held to embrace grandchildren, in order that this object of the statute might be carried out. And this view, in this statement, will appear not in opposition to the great current of authority on this subject.

In the other case, *Walton* v. *Cotton*, 19 How. p. 355, the supreme court of the United States, by a much divided bench, in a pension case held that, though grandchildren were not named in the act of congress conferring the pension, yet they were included in the equity of the statute. The reason assigned by the court is far from satisfactory. Said the court in that case, in support of its opinion, " the argument that the pension was a gratuity, and was intended to be personal will apply to grandchildren as well as to children. There can be no doubt that congress had the right to distribute this bounty at their pleasure . . . but they will be presumed to have acted under the ordinary influences which lead to an equitable and not a capricious result." And so the court held, in the exercise of its expansive views of equity, that a gratuity which was distinctly declared to be personal to the child of the deceased soldier would

apply as well to his grandchildren. We decline to yield to this self-confuting reasoning, or to adopt its conclusions.

In many states, the courts of last resort have passed upon statutes similar to the one now under consideration, and with practical uniformity the word *children* was held not to include grandchildren. The rule of interpretation must be that the words employed are to be taken in the ordinary and obvious signification, unless it shall be plainly necessary to enlarge or modify this signification, in order to effectuate the plain intent of the legislature in the enactment of the statute.

*Bigelow* v. *Moring,* 103 Mass. ; *Burgens* v. *Hargrave,* 64 Texas ; *Est. of Curry,* 39 Cal.

It is to be noted, too, that the language employed in section 1277 was carefully chosen. In other sections of the same statute, when provision is made which is designed to embrace descendants more remote than children, words appropriate are selected to accomplish the legislative intent. In these other sections, providing for and regulating the descent and distribution of the estates of intestates, we find that estates not devised shall descend to the children of the decedent " and their descendants, in equal parts ; the descendants of the deceased child, or grandchild, to take the share of the deceased parent :" and in every other instance, than such an one as that in the case at bar, when descendants other than and beyond children are intended to be embraced within the terms of the statute, they are specifically referred to and called descendants of children, or grandchildren. In view of this careful selection of words to designate the cases in which children shall take, and the equally careful selection of other words to designate when grandchildren shall take by inheritance, to fail to observe the difference and distinction would be to violate the very rule of interpretation referred to by appellants' counsel, viz : to give that interpretation, if not violent, which may be found necessary to effectuate the plain intention of the legislature.

The obvious and usual signification of the word employed, "children," and the manifest intention of the legislature in enacting the

statute, alike, require us to declare that grandchildren are not included in the phrase employed in the statute being considered.

*Affirmed.*

After the decree of affirmance was entered, appellants, by their guardian, filed their petition in this court praying that the decree be modified and the cause remanded, in order that by a suitable amendment they might ask relief based on certain facts not appearing in this record.

They allege that, after the rendition of the decree sustaining the demurrer of appellee to their cross-bill, their solicitors declined to amend and consented to a final decree and appealed; that they were advised at the time the cross-bill was filed that the true construction of the statute in question, § 1277, code 1880, would give them the whole of the homestead to the exclusion of the appellee, but since the decree was rendered they have learned that there were no debts due by the exemptionist at the time of his death, and, therefore, they contend that this statute providing for the exemption to the widow contemplated the existence of debts, and, in the absence of any debts, could not apply, and hence the homestead of the decedent descended as other property of the estate, and is subject to partition among the heirs.

Petitioners insist that, as they are minors under the protection of the court, no errors or omissions should interfere with their just rights; hence they pray that the cause be remanded to enable them to amend their pleadings, so as to present the facts above stated.

*Birchett & Shelton,* for petitioners.

WOODS, C. J., made the following response to the petition to modify the former opinion of the court.

The petition sets up new facts and presents a new case, and on these new facts and this new case prays such modification of the opinion of this court as will enable the parties to litigate this new case. It is apparent that the only method of meeting the petitioners' prayer would be in a reversal of the decree of the court below, and a remanding of the cause for transformation on the new

facts set up in the petition.    But this, it must appear on reflection, cannot be done.    With our views of the law, as contained in our former opinion, there can be no judgment but affirmance on the record as it stands.    It is impossible for us to reverse a decree manifestly correct, in order to open the way for the presentation of another case on new facts, even where minors are litigants.

*Petition denied.*