## No. 11,458.

### E. O. STANARD MILLING CO. VS. WILLIAM P. FLOWER.

1. The ratification of the act of an agent can not be divided and applied to one part of the act and excluded from the other; it is entire or nothing.

2. An agreement signed by an ostensible purchaser of flour couched in the following language:

"Bought of E. O. Standard Milling Company 3000 barrels of Eagle Steam flour at $3.85 f. o. b. St. Louis, for shipment at my option during month of March, 1893. It is further agreed and understood that if I do not want to receive the flour in March, settlement may be made as follows, viz.: E. O. Stanard Milling Company paying me any difference there may be if an advance in value or my paying E. O. Stanard Milling Company the difference between the purchase price and the market price at the time of settlement, provided the value then is less than the purchase price. Settling prices to be based on St. Louis Merchants Exchange quotations on extra fancy flour at date of settlement," held to be void as coming within the provisions of Art. 2983 of the Civil Code relative to gaming.

APPEAL from the Tenth District Court, Parish of Rapides. *Coco, J.*

*Robert P. Hunter* Attorney for Plaintiff and Appellant:

In a future contract relating to the sale of flour, if the party seeking to enforce the contract was ready to make an actual delivery of the flour, and if as to such party the contract so contemplated, it can be enforced at law, and is not reprobated as a wagering contract. Conner & Hare vs. Robinson, 37 An. 814; Gruner & Co. vs. Stucken, 39 An. 1076.

*John C. Ryan* and *J. R. Thornton* Attorneys for Defendant and Appellee:

Sales of property for future delivery, with the *bona fide* intention and obligation to make actual delivery, are lawful contracts; but if, under the form of such a contract, the real intent be merely to speculate on the rise or fall of prices, and the goods are not to be delivered, but the contract is to be settled on the basis of differences of price, the transaction is a wager and is non-actionable. Conner & Hare vs. Robinson, 37 An. 814 and 818; American and English Encyclopedia, Vol. 8, pp. 1006, 1007, 1011; Id., Vol. 3, pp. 873, 875.

The opinion of the court was delivered by

NICHOLLS, C. J.   Plaintiffs, a Missouri corporation, seek a judgment against the defendant for $2250 with legal interest from April 1, 1893, under an agreement evidenced by the following instrument:

AGREEMENT.

ST. LOUIS, MO., U. S. A., 10-21, 1892.

Bought of E. O. Stanard Milling Company 3000 barrels of Eagle Steam flour at $3.85 f. o. b. St. Louis, for shipment, at my option, during month of March, 1893.   It is further agreed and understood that if I do not want to receive the flour in March, settlement may be made as follows:

. E. O. Stanard Milling Company paying me any difference there may be if an advance in value OR my paying E. O. Stanard Milling Company the difference between the purchase price and the market price at the time of settlement;  provided, that the value then is less than the purchase price.   Settling prices to be based on St. Louis Merchants Exchange quotations on extra fancy flour date of settlement.

(Signed)          W. P. FLOWER,

per J. G. WHITE.

Plaintiffs allege that they have at all times been ready and willing to comply and have complied with all their obligations under the terms and stipulations of the said agreement, that they manufacture about 2500 barrels of flour daily, and were ready and willing during the month of March, 1893, to ship f. o. b. on the cars at St. Louis the 3000 barrels of flour bought by said William P. Flower, had he so ordered, in accordance with his option as specified in said agreement, which he utterly and entirely failed to do through no fault or neglect of theirs.   That not only did he not order the shipment of the flour purchased, but he has failed and refused to comply with the stipulations of the second clause in said agreement by settling the difference between the $3.85 per barrel fixed in the agreement and the price per barrel which said grade of Eagle Steam flour was selling for during the month of March, 1893, at St. Louis, to-wit: $3.10 per barrel, as would be shown by reference to the quotations of the St. Louis Merchants Exchange for extra fancy flour, which is the standard fixed by the said agreement, notwitnstanding amicable demand

was made upon him so to do, but on the contrary, when he was requested to settle the said differences in accordance with the terms of the agreement and the usages and commercial customs relating thereto he refused to settle said differences and announced his intention not to pay the same, thereby voluntarily placing himself in default and relieving and dispensing the plaintiffs with the duty or necessity of giving him any notices or making any further demands upon him; and they expressly deny that under the terms of said agreement they were called upon at any time to give Flower any demand or notices whatever. Plaintiffs aver that the sum claimed is the amount 'of the difference between the purchase price and the market price of said 3000 barrels of flour at the time specified in the agreement, and that this difference represents the actual loss of profits that they would have made on the said 3000 barrels of flour if the said Flower had complied with the contract and agreement and ordered the said 3000 barrels of flour shipped at any time during the month of March, 1893, and he justly owes them the said amount.

Defendant pleaded first the general issue. Further answering he declared that neither himself nor White, who signed the writing or agreement sued on, are merchants in flour or any other article of merchandise, either by the wholesale or retail. That Moses Bloom, who is and has long been a resident of the parish of Rapides, still is, and has been for the last fifteen years, the agent for the plaintiff, transacting and managing its business in Rapides and other neighboring parishes in the State. That he is well and favorably known in commercial circles and in business as a man of experience, honesty and integrity, and enjoys the confidence of all who knew him.

That a few days before the date of the writing sued on, respondent heard that flour was very low in price, and cheaper than it had been for many years, with every probability of its advancing a few months later on, and that the plaintiffs' agent, Moses Bloom, was selling what was and is known as speculating, wagering or future contracts for it. That he saw the agent, who confirmed this report, and thereupon ordered 3000 barrels of Eagle Steam flour, March futures, on a basis of $3.85 per barrel for that month; that it was distinctly agreed and understood that neither the said flour so ordered nor any part of it was contemplated or intended by either party for real or actual delivery in the month of March, 1893, or at any other time, and that the agreement was to be what is known as a specu-

lating, wagering future contract; that it was further understood that the margins on the said flour was 15 cents per barrel, or $450 on the whole 3000 barrels, and that if this brand and quality of flour should further decline as much as 15 cents per barrel respondent would be notified and called upon by plaintiffs for an additional margin of 15 cents per barrel, and that he would then have the option of keeping the margin good on that basis, otherwise he would lose any and all margins put up, and the whole transaction was to be deemed null and void from that mome t by all parties without further notice or delays. That not only at the time of giving the order but at the time of signing the writing or agreement sued on, it was the distinct understanding and expressed intention of all parties that it was a speculating, wagering a d future contract, and not an actual or real agreement for sale, purchase and delivery of a y flour i March, 1893, or any other time. That the whole matter was from beginning to end negotiated with and the writi g or agreement sued on signed at Alexandria, La., with the said Moses Bloom, who stated at the time of signing that it was well and perfectly understood that it was not a real contract for delivery or sale and purchase of actual flour because it was a notorious fact that that large quantity of flour would overstock the whole parish of Rapides; that it was never the intention of any party that the agreement sued on was to be considered a purchase, sale, transfer or delivery of any flour at any time, but a mere and simple wager on its future price or value in March, 1893.

That if the said writing is susceptible of any other construction or interpretation on its face than that of a speculatic g future wagering agreement as to the future price of Eagle Steam flour at the St. Louis Merchants Exchange in March, 1893, then he shows and avers that the same was signed and the whole transaction from beginning to end was made through error and mistake on the part of himself, the said White and the said Moses Bloom. That during his absence and without his knowledge the writing or agreement sued on was signed at Alexandria, La., and forwarded to the plaintiffs by the said Moses Bloom; that on his return to Alexandria on or about the 31st of October, 1892, he was for the first time informed that the agreement had been signed, and at the same time was notified by the Rapides bank that the plaintiffs had drawn two sight drafts on him, each for $450, and exchange thereon, and payment thereof was demanded.

That one of the said drafts was drawn and dated on October 24,

1892, and the other October 27, 1892. That he forthwith, on the 31st October, 1892, notified the plaintiff that he refused to honor the said drafts, and that he declined to consummate and execute the agreement by putting up the first or any subsequent margin and to consider the whole transaction at an end and off. Respondent specially denied that any demand was made on him for the amount sued for, or that any notice or statement was sent him, or any notice for him to pay for and receive the said flour, or that plaintiff was ready and willing to deliver any flour at any time before the filing of this suit; thus showing that it knew and understood the agreement sued on to be nothing more than a speculating wagering agreement as to the price and value of Eagle Steam flour at the St. Louis Merchants Exchange, March, 1893.

On the trial of the case the court rendered judgment rejecting plaintiff's demand, and it has appealed.

There can be no doubt that the contract as made between Bloom and Flower was what is known as a future contract. In his testimony the former admits that fact. He said: "I am an old resident of this town and parish. This whole transaction was negotiated through me here in Alexandria. When this flour was ordered it was understood that it was to be future flour; there was to be no actual delivery in March or at any other time; it was understood that it was a future contract—that no delivery was to be made. The understanding with Mr. Flower was that he was to put up a margin of fifteen cents per barrel and keep his margin good if flour declined. I can't remember whether I told Mr. Flower at the time he gave the order he would be closed out, but it is the custom so far as I know. Mr. Flower was not present when this contract was signed. I remember when Mr. White signed the agreement that he said to me: 'Now, Mr. Bloom, this is a future and not a real contract,' and I replied, 'This was not for actual delivery; that 3000 barrels of flour at one time here would overstock the market, and that if that large quantity of flour were in this town at one time, you couldn't sell it for 25c. per barrel.' It was not the intention of any of the parties that this should be actual flour—by any of the parties I mean myself, J. G. White or W. P. Flower. About the same time of this transaction, I made similar contracts for the delivery of flour in March. I sold about 13,000 barrels under similar contracts." Plaintiffs concede that the evidence establishes that the defendant did not contemplate

the actual purchase of 3000 barrels of flour, but submit that it does not establish any sub-understanding on the part of the plaintiffs. The company urge that Bloom was not authorized to make this particular contract; that the writing evidencing the agreement does not show on its face any illegality; that knowledge of the actual facts of the case was not brought home to them. We understand it to l e intimated that even though plaintiffs' agent (acting as such) may have made an illegal contract, the contract could none the less be enforced if the principals themselves were not aware of its character, for it is claimed that their right to recourse would not be affected unless they were a party to the understanding which made them so. Bloom, in the transaction, unquestionably acted for and in behalf of the plaintiffs in making this agreement. The plaintiffs sue upon it. If they affirm it at all they must do so in its entirety as made; they can not affirm part and repudiate a part. Elam vs. Carruth, 2 An. 275.

Without entering into details of the testimony in the case, it suffices to say that we are satisfied that the plaintiffs had full knowledge from the beginning of the exact terms of this agreement. Referring to the writing on which this suit is based, plaintiffs' counsel claims that it is nowhere stipulated in it that the E. O. Standard Milling Company are to have the option of not making an actual delivery of the flour; that their obligation to deliver the flour when called for in the month of March, 1893, f. o. b. on the cars at St. Louis, is absolute and unequivocal, that it is only the DEFENDANT who is granted the right of not calling for the actual flour and the privilege of requiring a settlement by an adjustment of the differences in price.

With a view of testing the character of the agreement entered into between the parties, let us assume that on the 31st of March, 1893, the price of flour, instead of being $3.85 per barrel, the price mentioned in the agreement as the purchase price, had advanced to $4.85; that on that day, the defendant having notified the plaintiff that he would not accept delivery of the flour, they had paid into his hands the sum of $3000, and then ask *by what right and under what title* would the *defendant* have *received* the money, *and from what cause*, from a legal standpoint, would the *plaintiffs have paid it*. Would it have been paid to defendant by way of damages? Damages are given as the result and consequence of a breach of contract, but

in the case assumed there would have BEEN no breach of contract, and not only was there not a breach of contract AS A CONTRACT OF SALE, but the plaintiffs would have been unable under the contract (no matter how greatly might have been their desire or their interest to do so) to free themselves from their obligations as vendors by the performance of the legal obligation of the delivery of the flour imposed upon them as such by the law. In spite of themselves they would have been forced under the contract (if legal) to have paid the defendant a sum of money. If the money would not have been paid by way of result or consequence of a *breach of contract*, then it *would* have been paid by *way of direct affirmative performance of an original contract.* If that contract had been one of sale, the performance would have consisted of the delivery of the 3000 barrels of flour, but instead of this we find that the position of parties to a contract of sale would have been reversed, the vendors paying over instead of receiving money; and not only this, but the amount so paid differing greatly from that stipulated as the price of the flour. Reasoning backward from result to cause, we find that this original contract was not one for the sale of flour.

Taking the suit as it is, what is its character? Is it a suit for the specific performance of a contract of sale? If it was, then the demand would be for the purchase price stipulated in the agreement and plaintiffs would have alleged and would seek to prove a tender; but the demand is not for the purchase, and the necessity of the tender is absolutely denied. Is it a suit against the plaintiffs for damages? Clearly not. If the defendant (had the plaintiffs made a tender) had declined to receive delivery, his refusal would have been simply the exercise by him of the legal right so to do expressly reserved and stipulated in the contract, and damages do not flow from the exercise of a legal right. New Orleans vs. Wardens, 11 An. 244. The suit is for the specific performance of a contract, but the contract sought to be enforced is not a contract of sale. We are of the opinion that the agreement was purely and simply that which Bloom declares in his testimony. All parties clearly understood it to be a wagering, speculating future contract in which an actual delivery of the flour was not contemplated under any contingency. The agreement bears on its face that the parties were not contracting on the basis of the after execution by either of the legal obligations springing from a contract of sale, but expressly *ab initio* upon the

fact of the non-execution of such obligations. It will be noticed that *under no contingency* was the milling company to have the *right* of delivery—a right which it certainly would have, had the contract been one of sale.

In holding that the agreement fell under the provisions of Article 2983, which declares that "the law grants no action for the payment for what has been won at gaming, or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun, and foot, horse and chariot racing," and was, therefore, not enforceable, we are of the opinion the District Court reached a correct conclusion, and the judgment appealed from is therefore affirmed.