CHATTANOOGA SEWER PIPE WORKS *v.* DUMLER.*

(Division A. Feb. 11, 1929.)

[120 So. 450. No. 27200.]

---

*Corpus Juris-Cyc References: Attorney and Client, 6CJ, section 364, p. 766, n. 80; section 369, p. 771, n. 31; Exemptions, 25CJ, section 63, p. 42, n. 58; section 118, p. 72, n. 41; Statutes, 36Cyc, p. 1114, n. 96. Words used in statute to be given their ordinary meaning unless contrary to the intention of the legislature, see 25 R. C. L. 988; 3 R. C. L. Supp. 1436; 4 R. C. L. Supp. 1613; 5 R. C. L. Supp. 1357; 6 R. C. L. Supp. 1497; 7 R. C. L. Supp. 859. On right of attorney to lien on moneys collected by him for his client in the course of his employment, see 2 R. C. L. 1064; 1 R. C. L. Supp. 692.

*Somerville & Somerville,* for appellant.

*Shands, Elmore & Causey,* for appellee.

*Somerville & Somerville* and *Howorth & Howorth,* in reply for appellant.

Cook, J. On April 15, 1924, the appellant, Chattanooga Sewer Pipe Works, secured judgment against O'Neal, Dumler & Miles, a partnership, and L. J. Dumler, as an individual, and this judgment was duly enrolled on the judgment roll of the Second judicial district of Bolivar county, Mississippi, on April 22, 1924. On January 17, 1924, the appellee L. J. Dumler filed a suit in the circuit court of the Second judicial district of Bolivar county against the New York Life Insurance Company on a policy of insurance, seeking to recover under the provisions of the policy for total disability of the appellee from January 19, 1922, to January 19, 1923, and this suit was pending at the time the appellant secured its judgment against the appellee, and at the time of the issuance of the writ of garnishment here involved. On September 22, 1924, based upon the enrolled judgment against the appellee, the appellant filed a suggestion for a writ of garnishment, and the writ was issued and served on the New York Life Insurance Company on September 25, 1924.

On January 28, 1925, four months and three days after the service of the writ of garnishment on the New York Life Insurance Company, the appellee Dumler and the other members of the firm of O'Neal, Dumler & Miles filed joint and several petitions in bankruptcy, listing among its creditors the appellant, which then held a

judgment against the firm and the appellee. The appellee was regularly adjudicated a bankrupt, and was afterwards granted a discharge. The policy of insurance upon which suit was then pending was not listed on the original schedules filed in the bankruptcy proceedings, but was listed on an amended schedule, and thereafter, upon a petition filed by the bankrupt, the referee in bankruptcy ordered the trustee to surrender the policy to the appellee, not upon any claim of exemption, but on the showing or ground that it then had no cash surrender value and was of no value to the estate.

The insurance company answered the writ of garnishment, and denied any liability or indebtedness to the appellee, but suggested that its liability to appellee on the insurance policy was then in litigation, and asked the court to suspend action until the final determination of such litigation. This was done, and, upon the final determination of the cause in favor of the appellee, the insurance company paid unto the court the amount that had been adjudicated to be due by it to the appellee, and asked that the appellant and the appellee Dumler be interpleaded to determine the rights of property in this money. The appellant and the appellee filed petitions asserting their respective claims to these funds; the appellant claiming under and by virtue of the lien of the garnishment writ, and appellee claiming that the money arising from the cause of action against the insurance company was exempt from all liability and debts against him, and that one-half of said money was subject to a superior lien to the garnishment, being the attorneys' fees for recovering from said insurance company the money under a contract of retainer made before the filing of the writ of garnishment.

The garnishment proceedings and the proceedings interpleading the respective claimants of the funds received from the insurance company were consolidated and heard before the court, without the intervention of

a jury, upon an agreement of counsel as to the rendition, date, and amount of the judgment against appellee, and the adjudication and discharge of the appellee as a bankrupt. It was also agreed that the money in the hands of the court was the proceeds of a judgment against the New York Life Insurance Company in a suit on a policy of insurance in said company, and on the life of appellee, containing a clause to the effect that, if he became wholly disabled by bodily injury or disease, and was thereby prevented from engaging in any occupation whatever for remuneration or profit, then he should have cause of action against said company. It was also agreed that the record of the proceedings in bankruptcy and proceedings in the suit of appellee against the insurance company should be considered as introduced in evidence in this cause. It was further agreed that, at the time of the filing of the suit against the insurance company by the appellee, Dumler, it was agreed between the said Dumler and the attorneys filing said suit that the fee of said attorneys in said cause was to be one-half of all amounts recovered, and that said attorneys, Shands, Elmore & Causey, were to receive one-half of all amounts recovered in said cause. Upon the hearing of the cause, the court below held that the funds in controversy were exempt from garnishment, and ordered that the writ of garnishment be dismissed and the money paid to the appellee L. J. Dumler, and from this judgment this appeal was prosecuted.

The appellee contends that the money here in controversy is the proceeds of a judgment for personal injury sustained by the appellee, and therefore inures to him free from all liability for his debts, under and by virtue of chapter 146, Laws of 1914 (section 1895, Hemingway's 1927 Code), which reads as follows:

"The proceeds of any judgment not exceeding ten thousand ($10,000) dollars recovered by any person on account of personal injuries sustained, shall inure to the

party or parties in whose favor such judgment may be rendered, free from all liabilities for the debts of the person injured.''

We do not think this statute has any application to the facts of this case. The recovery by appellee against the insurance company was upon an indemnity contract by which the insurance company agreed to pay annually to appellee one-tenth of the face of the policy if he became wholly disabled by bodily injury or disease so that he was permanently and continuously prevented from engaging in any occupation whatever for remuneration or profit. The proof upon which the recovery was based was to the effect that during the period for which recovery was had the appellee was suffering from a disease known as multiple neuritis, resulting in extreme nervousness and partial paralysis.

It is probably true, as contended by counsel for the appellee, that the words ''personal injury sustained'' in their broadest significance could be construed to cover damage to the body or person resulting from disease, or, in other words, that a diseased body is one that has sustained an injury, but we do not think these words, as used in this statute, were intended to convey such meaning, or that they should be construed to cover ''an action on account of personal injuries sustained.'' ''The true sense in which words are used in a statute, is to be ascertained generally by taking them in their ordinary and popular signification'' (*Green* v. *Weller*, 32 Miss. 650), and ''words employed in a statute are to be taken in their ordinary and obvious signification, unless it is clearly necessary to enlarge or modify this in order to effect the plain intent of the legislature'' (*Peeler* v. *Peeler*, 68 Miss. 141, 8 So. 392), and we think the ordinary and popular understanding of the words, ''proceeds of a judgment recovered on account of personal injury sustained,'' is damages recovered for some injury inflicted by, or received as a result of, the act or omission

of some active agency other than disease or natural bodily infirmity, and that these words were not intended to cover, and should not be construed as covering, an action on a contract to indemnify the insured against disability resulting from disease.

The appellee next contends that the proceeds of this judgment against the insurance company are exempt under and by virtue of the provisions of chapter 186 of the Laws of 1922 (section 1893, Hemingway's 1927 Code), which reads as follows:

"The proceeds of a life insurance policy not exceeding five thousand dollars payable to the executor, or administrator of the insured, shall inure to the heirs or legatees, freed from all liability for the debts of the decedent, except premiums paid on the policy by any one other than the insured for debts due for expenses of last illness and for burial; but if the life of the deceased be insured for the benefit of his heirs or legatees at the time of his death otherwise, and they shall collect the same, the sum collected shall be deducted from the five thousand dollars and the excess of the latter only shall be exempt. But no fee shall be paid or allowed by the court to the executor or administrator for handling same."

In support of the view that this money is exempt under the provisions of this statute, the appellee relies upon the case of *Dreyfus* v. *Barton,* 98 Miss. 758, 54 So. 254, in which it was held that the object of this statute is to secure to the insured a policy not to exceed three (now five) thousand dollars from liability to any creditor or any debt, the court saying:

"This statute exempts the whole proceeds, or any part of it, whether the value accrues during the life or after the death of the insured. The cash surrender value of the policy is just as much 'proceeds' of the policy, within the meaning of the statute, as would be the full amount after the death of the insured. In other words, when the person insured dies, the proceeds of the policy are ex-

empt; while he lives, if the policy acquires a cash surrender value, this cash surrender value is 'proceeds' within the meaning of the statute, and exempt so long as the value in either case does not exceed three thousand dollars. Any other construction of the statute would impair, if it did not destroy in some cases, the object of the statute.''

We do not think that this case is controlling or decisive of the question presented by this record. In the *Barton case, supra,* the question decided was that the cash surrender value of a strictly life insurance policy was ''proceeds'' of the policy within the meaning of the statute, and was exempt during the life of the insured as well as after his death. To hold otherwise would permit the creditors of the insured to entirely destroy insurance taken for the protection of the family of the insured by subjecting the cash surrender value of the policy to liability for the debts of the insured.

In the case at bar, the money involved is in no proper sense the proceeds of a life insurance policy. It is true that it arises out of one of the provisions of a policy of insurance on the life of the appellee, but this provision is a contract of indemnity wholly separate from the contract to pay a fixed sum upon the death of the insured. The statute provides that the proceeds of a life insurance policy payable to the executor, or administrator, of the insured shall inure to the heirs or legatees freed from all liability for the debts of the decedent. In the contract of insurance upon which the appellee recovered, the life insurance is payable to the executor, administrator, or assigns of the decedent, while the disability benefit is payable to the insured. In this contract of insurance, a separate premium of thirty-eight dollars for the disability benefit is fixed and named. The life insurance went into effect upon the delivery of the policy, while the disability benefit was payable one year after the anniversary of the policy next succeeding the receipt of proof

that the insured had become wholly disabled by bodily injury or disease so that he was permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability had existed for not less than sixty days. The indemnity benefit terminated when the insured reached the age of sixty years, while there was no such limitation on the life insurance. It was expressly provided that payments made under the disability contract should not alter or reduce the amount payable under the life insurance clause in any settlement of the policy. It thus appears that this contract of insurance contains two wholly separate contracts, one of life insurance, and the other a contract of indemnity against total and permanent physical disability, and that payments made under the latter contract in no wise affected the rights of the heirs and legatees of the insured, which are protected by the provisions of this statute. We therefore conclude that the proceeds of the judgment recovered by appellee under this disability benefit were not exempt from the garnishment, and that, since the writ of garnishment was levied more than four months prior to the date the appellee filed his petition in bankruptcy, the appellant is entitled to recover out of the funds paid into the court the full amount of its judgment, unless the funds so recovered from the insurance company are subject to a prior lien in favor of the attorneys for services rendered in the suit against the insurance company.

Upon the trial of this cause in the court below, it was agreed that, at the time of the filing of the suit against the insurance company by the appellee, he entered into a contract or agreement with his attorneys that they were to receive one-half of all amounts recovered as their compensation for services rendered in said cause. It has been uniformly held by this court that an attorney has a lien on the funds of his client for the services rendered in the proceeding by which the money was col-

lected. *Halsell* v. *Turner*, 84 Miss. 432, 36 So. 531, and authorities there cited. In the case of *Halsell* v. *Turner*, *supra*, it was held that "the rule is the same whether there exists an express contract between attorney and client for a stated fee or whether there is only an implied contract to pay the reasonable value of services rendered." In the case at bar there was an express contract between the attorneys and the client which was made long prior to the levy of the writ of garnishment. The appellee had a right to make this contract for a contingent fee, and there is nothing in the record to show, and no attempt to show, that it was unreasonable or unconscionable, and we are therefore of the opinion that these attorneys have a paramount lien on the funds for one-half thereof.

The judgment of the court below will therefore be reversed, and a judgment will be entered here in favor of the appellant for one thousand six hundred sixty-eight dollars thirty-one cents, being one half of the amount paid into court by the insurance company.

*Reversed, and judgment for appellant.*