## FIGGINS v. LIFE & CASUALTY INS. CO. OF TENNESSEE. *

### No. 14540.

Court of Appeal of Louisiana. Orleans.

Nov. 27, 1933.

130

Gaspar R. Bossetta, of New Orleans, for appellant.

Harry R. Cabral, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by a policyholder against an industrial life insurance company for the return of premiums amounting to $182.42 paid under a policy of life insurance and sick benefit upon the ground that no valid contract of insurance was executed. There was judgment below dismissing the suit, and plaintiff has appealed.

Baptiste Figgins, a 45 year old negro, on the 24th of October, 1921, obtained a policy in the defendant company on a printed form in which "$500.00" had been typewritten in the appropriate place in figures as representing the amount of life insurance to be paid to his beneficiary. The policy also provided for $5 per week for sick and accident benefit and stipulated that 80 per cent. of the premium covered the sick and accident feature of the policy and 20 per cent. the life insurance. After carrying the policy for ten years, during which time the beneficiary died, Figgins attempted to have another beneficiary named in the policy and for that purpose, on January 30, 1931, sent it to the home office of the company in order to effect the change. When the policy was returned to Figgins, the figures "500" had been erased and "50" substituted, whereupon Figgins, after consulting with counsel, demanded that the premiums paid during the time he had carried the policy be returned to him and, failing to obtain settlement, brought this suit, which is defended upon the ground that, under the laws of Tennessee, the state of its origin, the defendant could not issue a policy for $500 of life insurance for a premium of 25 cents a week; that the premium paid by plaintiff did not and could not entitle him to a policy in excess of $50; that "if the policy was originally $500.00 it was issued purely in error," and, in the alternative, that only 20 per cent. of the premium paid was allocated toward the life insurance, the other 80 per cent. being for accident and sick benefit; consequently only 5 cents a week had been collected as premium for life insurance, and not 25 cents as claimed.

In regard to the change from $500 to $50, the defendant in its answer declared that "in some unaccountable way the amount of the death benefit was changed from $500.00 to $50.00"; but, in a letter written by T. R. Thornberry, the local superintendent, dated April 18, 1932, and addressed to the attorneys then representing the plaintiff, the admission is made that the change was made by defendant when the policy was returned to the home office for the purpose of substituting a new beneficiary, the explanation of the change, as given in the letter, being as follows:

"We know that you will appreciate the fact that it would have been best to have done this rather than go in the courts and refine (reform) the policy."

At the time the change was made by the company, it was said to have been done to conform to the application which was in the possession of the home office. The application was called for by opposing counsel, and a photostatic copy, but not the original application, was produced. In this copy the death benefit is put down as $50, but there is an indistinct outline of an additional naught after the "50," and, moreover, the figure "5," in which the "50" is written, is unlike the other four figures 5 which appear on this copy—a circumstance sufficient, in our opinion to cast suspicion upon the copy. The original was not produced and, consequently, we have no means of knowing whether there would be any indication of an erasure or not. On the question of fact, therefore, we conclude that the policy as originally issued to the plaintiff called for $500 worth of life insurance and that it was changed in the office of the defendant company, which, incidentally, failed to notify plaintiff of the change. We do not wish to be understood as intimating that the company was guilty of any fraud in the matter, but merely that it had corrected a mistake made by some one in its employ in the issuance of the policy. We are satisfied from the evidence that Figgins believed he was getting a policy calling for $500, and, in view of the showing to the effect that that amount of insurance could not properly be issued for the premium charged, we are also convinced that the intention of the company was to write a $50 policy. The result, therefore, is that there was no contract of insurance because there was no meeting of the minds.

"A legal agreement is a concurrence of two minds upon the object and consideration of a contract. The will of both parties must unite on the same point." (Syllabus.) Holtzman v. Millaudon, 18 La. Ann. 29.

"Whatever may be its [the object] value, if it be not in substance what the purchaser believed he was receiving, his error must invalidate the sale, because it prevented his

consent." Knight v. Lanfear et al., 7 Rob. (La.) 172.

But it is contended that the plaintiff's recovery should be limited to 5 cents a week during the existence of the policy and not 25 cents, as claimed, because 80 per cent., or 20 cents, of the premium covered accident and sick benefit, and only 20 per cent., or 5 cents, life insurance, and therefore plaintiff enjoyed the protection which his 20-cent premium entitled him to during the existence of the policy.

Our understanding of the law is that the contract is indivisible regardless of how the premium was allocated, the consideration moving to the policyholder being the entire obligation assumed by the insurer and not a part thereof. Elam v. Carruth, 2 La. Ann. 275; Standard Milling Co. v. Flower, 46 La. Ann. 316, 15 So. 16; St. Landry Wholesale Mercantile Co. v. New Hampshire Fire Ins. Co., 114 La. 146, 38 So. 87, 3 Ann. Cas. 821.

For the reasons assigned the judgment appealed from is reversed, and it is now ordered that there be judgment herein in favor of the plaintiff, Baptiste Figgins, and against the defendant, Life & Casualty Insurance Company of Tennessee, in the full sum of $182.42, costs of both courts to be paid by appellee.

Reversed.