GLADNEY, Judge.
Plaintiff appeals from a ruling of the City Court in Shreveport, Louisiana, refusing her request for a return of all insurance premiums paid to the defendant company on three policies, amounting to $149.60. She claims this amount as damages for alleged wrongful refusal of the company to accept further premiums on a policy providing indemnity, inter alia, for health and accident. Appellant’s legal position is that the three policies which were issued to her constitute a single contract of insurance and payment by her of 88^ weekly for the policies was a single premium for one contract, the provisions of which, it is argued, are inseparable and indivisible and defendant is without right to cancel that portion of the contract dealing with health and accident, because two of the policies were then incontestable.
The salient facts are not seriously disputed.
On June 4, 1947, plaintiff made application for a life insurance contract for $451.-00, whereupon policy No. 05054428 was issued on June 16, 1947, specifying a premium of 55 cents weekly. A second application was made on September 17, 1947 and in response thereto two policies were issued, one, number 05154020, a life insurance contract in the amount of $41.00, for which a premium was charged of five cents (5‡) per week, and the other number S-5154020, constituted a health and accident policy, for which there was payable weekly a premium of twenty-eight cents (28‡). Both of the policies were issued as of October 6,. 1947. We observe the total of the three weekly premiums amounted to eighty-eight cents (88‡).
Under' date of December 23, 1950, plaintiff sustained an injury to her left thumb which became infected, causing her to report to a doctor on January 2nd. As a result of the injury she was treated through January 8, 1951, at which time she was discharged by the examining physician as well. Payment of the claim was made under the health and accident policy for the period of disability from January 2nd through January 9, 1951.
It also appears plaintiff presented a second claim for disability for the week of January 9th through January 16, 1951, but this was rejected by the company on the ground that there was no evidence of disability. In addition to her claim for the return of the premiums as damages, plaintiff claims that she is entitled to payment of $7.00 for one week’s disability, together with attorney’s fees of $50.00. It is our appreciation of the facts that the claim made by plaintiff was based on disability arising from the injury of December 23, 1950. The judge a quo upon reviewing this evidence rejected as unproven her claim for disability. The ruling is supported by a finding of the doctor that treated appellant and who reported plaintiff was cured or. well as of January 9, 1951. This evidence is disputed only by the testimony of plaintiff, who claims that subsequent to January 9th she was still unable to resume her employment. The judgment, as we interpret it, held plaintiff has failed to establish her disability subsequent to January 9, 1951, by a preponderance of the evidence. We concur in the ruling on this point.
The insurer on January 22, 1951, declined to accept any further premiums on the health and accident policy but offered to accept future premiums on the two life policies. It asserted it was within its rights in terminating the health and accident contract because of the clause therein, reading: “All insurance hereunder is weekly term insurance, beginning the day this contract is dated and is renewable at the option of the company.”
Act No. 193 of 1906, as amended and revised by Act No. 288 of 1946, required every policy’ of life or endowment insurance issued on the life of a resident of this state by a company organized under the legal reserve laws and delivered within this state to provide that after three full annual premiums have been paid, the policy *771 could not lapse or forfeit through nonpayment of any premium thereafter during the period of extended insurance created under the accumulated policy reserve. The two life, or as styled in the contract, industrial policies, specifically provide that after premiums have been duly paid for three years or more, the insured will be entitled to extended insurance for the amount stipulated in a schedule set out on the policy. The legal effect thereof is that upon the lapse of an industrial life or endowment policy for non-payment of premiums, the accumulated policy reserve must by the company he applied to purchase extended insurance of the former policy amount, regardless of any provision in the policy to the contrary. Succession of Watson v. Metropolitan Life Insurance Company, 183 La. 25, 162 So. 790; Givens v. Washington National Insurance Company, La.App., 170 So. 810.
 If the provisions of all three contracts may be said to embrace and constitute but a single contract, the terms of which are so worded as to be inseparable and indivisible as to the several policies, all three policies would be governed by the extended insurance clause, and no right to terminate the health and accident policy ■could arise as long as extended insurance remained. Actually, however, the three policies issued to appellant are distinct and separate contracts in every way— each identified by a distinct number and each representing a single obligation, complete by its own terms. Under such facts there can be no inseparability or indivisión as it is plain enough the parties intended such contracts to be separate.
On the reverse side of each one of said policies there is printed a schedule listing the name of the insured, policy number, age, premium and date of policy. By inspection and reading it is made clear that the insurer was endeavoring to keep each contract independent of the obligations contained in any other. The insured by her acceptance for four years signified her approval and consent to the action taken by the company. Contained in each policy is an express provision to the effect the policy constitutes the entire agreement between the company and the' insured. The validity of such a clause in an insurance policy, though not questioned prior to the Louisiana Insurance Code, LSA-R.S. 22:1-1459, is approved in Section 22:213, subd. A(l): “Entire contract: Changes: This policy, including the endorsements and the attached papers, if any, and in case of domestic industrial insurers, the written application, constitutes the entire contract of insurance. * * * ”,
The general rule stated in 17 C.J.S., Contracts, § 334, page 790, as to sever-ability, is as follows: “A test of sever-ability which has frequently been applied is to the effect that, if the consideration is single, the contract is entire, but if the consideration is either expressly or by necessary implication apportioned, the contract will be regarded as severable, although this test will not necessarily prevail over other provisions of the contract showing a contrary intent of the parties. So, where the portion of the contract to be performed by one party consists of several and distinct items, and the price to be paid is apportioned to each item according to the value thereof and not as one unit in a whole or a part of 'a round sum, the contract will ordinarily be regarded as severable; and this rule applies, although the contract may in a sense be entire, if what is to be paid is clearly and distinctly apportioned to the different items as such and not to them as parts of one whole.”
In the Louisiana Insurance Code we also notice in Section 22:213, subd. B (7) that in this kind of insurance the insurer may cancel the policy at any time, by written notice delivered to the insured, or mailed to his last address as shown by the records of the insured, but shall refund the pro rata unearned portions of any premium paid, and such cancellation is without prejudice to any claim originating prior thereto. The insured may likewise cancel this policy on the above terms.
 In the ordinary policy of health and accident insurance the duration of' the risk assumed by the insurer is set out, and such policies, even without any expressed provision to that effect, are generally regarded as a species of term in *772 surance not renewable except with the consent of the insurer. Exceptions may, arise as the courts ascertain the true intention of the parties or when ambiguities arise and need interpretation. In the case at bar there is no evidence which persuades us the ap-pellee considered its obligations under all three contracts inseparable.
Counsel has cited no statutory provision, and we know of none, requiring a single health and accident insurance policy to be incontestable after a definite period of time. The insurance code as cited above, also recognizes the right of the insurer to cancel upon notice. The provisions of Act No. 193 of 1906, as amended by Act No. 288 of 1946, have application to the life insurance policies herein taken out by appellant, but have no application to, the health and accident policy. In the absence of. a statutory prohibition in this state against the refusal of an insurance company to extend a policy written for a definite term, we must recognize such a provision, and, as a consequence, the insurer may refuse to accept premiums for an additional term of said insurance.
It is within legal sanction for contracting parties to include within a single policy two separate contracts of insurance and it is permissible for a single contract of insurance to be embraced within more than one self-styled policy. In deciding if the agreement or agreements of the nature referred to possess severability, a determining factor frequently resorted to is whether the premium is expressed as a single amount for the whole policy or is apportioned to the various benefits provided. Equitable Life Assur. Soc. v. Deem, 4 Cir., 1937, 91 F.2d 569, writ of certiorari denied in, 1937, 302 U.S. 744, 58 S.Ct. 146, 82 L.Ed. 575; Malloy v. New York Life Ins. Co., 1 Cir., 1939, 103 F.2d 439, writ of certiorari denied in 1939, 308 U.S. 572, 60 S.Ct. 86, 84 L.Ed. 480; New York Life Ins. Co. v. Davis, D.C., 1933, 5 F.Supp. 316; Guardian Life Ins. Co. v. Barry, 1937, 213 Ind. 56, 10 N.E.2d 614; Armstrong v. Illinois Bankers Life Ass’n, 217 Ind. 601, 29 N.E.2d 415, 131 A.L.R. 769; Peek Estate v. New York Life Ins. Co., 1928, 206 Iowa 1237, 219 N.W. 487; Chattanooga Sewer Pipe Works v. Dumler, 1929, 153 Miss. 276, 120 So. 450, 62 A.L.R. 999; Rosso v. New York Life Ins. Co., 1930, 157 Miss. 469, 128 So. 343, 69 A.L.R. 883.
Plaintiff argues as authority for her position herein the case of Figgins v. Life and Casualty Insurance Company of Tennessee, La.App., 151 So. 129, 130. Judge Westerfield, as the organ of the Orleans Court of Appeals, ordered the return to Figgins of premiums paid under a combination industrial life and health and accident policy, on the ground that there had never been a Contract between the parties. It appeared that plaintiff received a policy of insurance • providing for death benefit of $500.00, and subsequently when the insurer desired to change the beneficiary and returned the policy to the company the insurer discovered that the amount of insurance was intended to be $50.00 instead of $500.00. Accordingly, the company corrected and returned the policy to Figgins who brought suit for the return of all premiums. The Court concluded: “The result, therefore, is that there was no contract of insurance because there was no meeting of the minds.” There, however, defendant contended that the returned amount should be limited to twenty per cent (20%) of the premiums paid, claiming that this amount only was apportioned from the premium to the life insurance protection. On holding such a policy indivisible regardless of how the premium was allocated, the judge said the consideration moving to the policy holder was the entire obligation assumed by the insurer and not a part thereof. In the instant case there was no combination of life and health and accident benefits within one contract or policy, but each was separate.
The same difference must be made, we think, between appellant’s case and that reported in Givens v. Washington National Insurance Company, La.App., 170 So. 810, where plaintiff was issued a policy on September 16, 1929, which stipulated that in consideration of the specified premium, upon the death of Givens, while the policy remained in effect, the company would pay *773 the beneficiary a cash benefit of $135.00, and that in the event of his being disabled by sickness or accident while the policy remained in effect, it would pay to him a weekly disability benefit at a rate fixed in the policy. Judge Janvier, writing for the Orleans Court of Appeals, concluded the policy as issued was indivisible, that the whole premium was. balanced against the whole insurance and as a result of this conclusion he ordered paid the claim for the death of Givens, which occurred Oc-1 tober 14, 1934, after there had elapsed a period of fifteen'months and eighteen days during which no premiums had been paid. Under the facts therein presented, Act No. 193 of 1906 was applicable and the policy was automatically extended by application of the accumulated reserve for a period beyond the death of Givens.
In the Givens case there was a single policy and a single premium paid for the combination policy, and the question before the Court was to properly divide or apportion the premium in order to ascertain the amount of extended insurance. Here we are presented with a single disability or health and accident policy which draws its own premium, and apportionment of the premium earnings between life on the one hand, and health and accident risks on the other, does not arise.
Though appellant contends she made a weekly payment of 88$ which she says she considered a single premium for the three policies, the applications, receipt books and the separate policies manifest the individuality of each premium, and we find no merit in her contention.
A further contention by appellant is that the policy contained a provision to the effect : “When premiums are four (4) weeks in arrears this .policy shall (without prejudice to any then existing claim for disability or loss otherwise payable in accordance with the terms hereof) lapse and become void.”
 The theory behind this contention is that the quoted clause prevents the policy from being a term policy. We do not think ambiguity results from the insertion of this provision. As a matter of fact, under the clause referred to above providing that all insurance hereunder is weekly term insurance, the insured would have the same right to refuse to accept premiums if such quoted provision was not incorporated in the policy. Consequently, the right of the company to refuse certain benefits after premiums are four weeks in arrears adds no restrictions to the policy and, in our opinion, does not mislead the insured. Of course, no authority need be quoted to the effect that a policy may not be canceled to the prejudice of any existing claim.
In the Givens case, supra [170 So. 812.], the Court discussed a provision for future premiums, reading: “This policy shall not lapse for non-payment of premiums until the premiums for four (4) Mondays are in arrears * * (Italics ours.)
Here the provision for future payments is; “ * * * and thereafter, the payment of a like premium in advance on and before Monday of each week the Company does hereby, subject to the provisions, conditions and ■ limitations appearing * * *
We find among such conditions, this: “All insurance hereunder is weekly term insurance beginning the day this contract is dated and is renewable at the option of the company.”
Also there is the above referred to provision that: “When premiums are four (4) weeks in arrears this policy shall (without prejudice to any then existing claim * * *) lapse and become void.”
The several provisions quoted from the policy of Minnie Smith must be read together, and when we do this a proper construction would hold that the policyholder, even after premiums are four weeks in arrears, may continue to pay premiums and retain his protection, provided, however, if it desires to terminate the policy at the end of each week the company may do so at its option.
Cited as favoring the position of appellant are: National Life Insurance Company v. Jackson, 18 Ga.App. 494, 89 S.E. 633: Pilgrims Health and Accident In *774 surance Company v. Scott, 12 Ga.App. 749, 78 S.E. 469. The decision in this first referred to case hinged upon an interpretation of a contract where the policy contained no provision permitting it to terminate without the consent of the insured. The second cited case rejected an attempt to cancel the policy after the insured became sick and premiums had been paid. No one can question the refusal of a Court to permit cancellation to the prejudice' of a valid claim.
Other authorities referred to are-to the effect damages, as herein claimed, are allowed where cancellation by the insurer is wrongful. With these we can agree, but because of the facts found herein such damages cannot be assessed.
We find a number of cases of other jurisdictions supporting the views expressed herein, but we 'do not consider it necessary to discuss these because of the approval given the right of termination by the Louisiana Insurance Code, supra.
We find no error in the judgment from which appealed, and it follows from the views herein reported, that:
(1) Appellant’s health and accident policy was a separate and distinct contract from the life or industrial policies held by her, and therefore, was not affected by extended insurance and incontestable provisions;
(2) That the provision permitting the company to terminate its policy under the weekly term clause is valid and was not wrongfully exercised herein;
(3) That the clause declaring the lapse of the policy when premiums are four weeks in arrears, does not mean the policy may not be terminated prior to the end of such four weeks, but such provision is subject to the weekly renewal proviso under which the company at its option may terminate the contract; and
(4) Appellant failed in her proof to establish disability for the period from January 9-16, 1951.
The judgment is therefore affirmed at appellant’s cost.