# Wytheville

THE HOME INSURANCE COMPANY, ETC. V. GEORGE R. BERRY
AND HERBERT BARNES.

June 10, 1940.

Record No. 2236.

Present, All the Justices.

The opinion states the case.

*Alexander H. Sands* and *B. Drummond Ayres,* for the plaintiff in error.

*Ernest Ruediger* and *Elmer W. Somers,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

In this case the plaintiff has obtained a verdict and judgment for the full amount of his insurance policy. From it the defendant has appealed and has obtained a writ of error.

In 1923 or 1924, George R. Berry purchased from A. J. Gibbons ten acres of land in Accomack county at the price of $4,000. Upon it he built a storeroom with living rooms attached and a filling station and placed therein such fixtures as are commonly required for the conduct of such a business.

By deed of general warranty, dated September 23, 1933, he conveyed this land to his son, Howard H. Berry, the consideration expressed in the deed being $250 cash and the assumption by the grantee of a recorded lien for $2,000. As a further reason moving the grantor, it is stated that the grantee had advanced all of the purchase price for the land conveyed. The father then went into voluntary bankruptcy and was later discharged.

By deed of general warranty, dated June 5, 1937, Howard Berry reconveyed this land to his father, the consideration expressed being $1 and other valuable considerations. On June 4th of that year, by a recorded bill of sale, he conveyed to his father all goods in the storeroom and all gas and oil in the filling station, the consideration being $400, cash in hand paid.

George R. Berry called up R. H. Hearne, agent for the defendant company, and said that he desired to secure insurance on this property. A "binder" was put upon it as of May 28, 1938, and the policy bears that date. It was actually delivered on June 2nd and June 6th a rider was attached making it payable to Herbert Barnes, trustee, as his interest might appear. He was substituted trustee in a deed of trust of date April 24, 1931, which secured to Mrs. Wessells a debt of $2,000, and of course the agent was told that there was such a lien upon the property.

It was totally destroyed by fire on the night of June 23, 1938. There was then outstanding another policy for $1,500, written by the Eastern Shore of Virginia Fire Insurance Company for the benefit of Mrs. Wessells. It has since been paid.

The risks assumed were divided, $1,000 on the building and $1,000 on furniture and fixtures.

This building was put up in 1926 by George R. Berry at a cost of $4,575 and had recently been repainted at an expense of $225. It was in good condition.

Fixtures cost $1,804 and were from three to nine years old. About a year before the fire George Berry offered to sell the entire property insured to Mr. Herman C. Watson for $3,250. Watson thought that the fixtures were then worth about $400. The son said that when he reconveyed them to his father he was given for them a note for $1,500, which was burned. Just what they were worth nobody will ever know. There is considerable evidence on the subject but its conflict has been settled by a jury's verdict, so we may dismiss the question of value.

The actual consideration supporting these several conveyances between father and son has been questioned, but, as between them, the father, George R. Berry, was the owner of record and his son Howard had no interest therein. There was no offer to prove that others were interested and no suggestion that there were any. We therefore reach the conclusion that for the purposes of this case the father at the time of the fire was an unconditional owner.

■ In the policy are these provisions:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto * * * . If with the knowledge of the insured foreclosure proceedings be commenced or notice given of sale of any property insured hereunder by reason of any mortgage or deed of trust."

This is a lawful contract provision and, moreover, is a reasonable one. One moved by a proper motive is not apt to insure property which is about to be sold for a debt of his

otherwise not collectable. This statement of the law is quoted with approval in *Bawden* v. *American Ins. Co.*, 153 Va. 416, 150 S. E. 257:

"It is generally conceed that as a rule, in case foreclosure proceedings are commenced because of inability to redeem, the temptation is increased to realize upon the property by destroying it, and from the funds obtained thereby to pay off the encumbrance and, therefore, the moral hazard in such cases has become an important consideration with insurers as it has an appreciable effect upon losses and consequently upon the insurance business, and furnishes an important consideration in determining whether such risk shall be continued." 4 Joyce on Insurance, section 2270-a.

■ Moreover, in the *Bawden Case* it was held that actual knowledge was not absolutely necessary. The substance of that decision sustained by the record is thus stated in its syllabus:

"Plaintiff contended that, as policies of insurance are construed most strongly against the insurer and in favor of the assured, the knowledge of the assured that notice of the sale has been given must be actual knowledge—information so very minute and circumstantial that the assured receiving it thereby acquires complete and real knowledge. But such a meticulous construction of the provision would merely cancel the provision as the assured is seldom in possession of such complete information."

■ "Fair dealing requires that he (the insured) should state everything which might influence, and probably would influence the mind of the underwriter in forming or declining the contract." *Columbian Ins. Co.* v. *Lawrence*, 2 Pet. 25, 49, 7 L. Ed. 335.

Relevant facts are these: The Wessells debt was in default. Nothing had been paid on the principal and more than two years' interest was due. The trustee had been requested to sell and did advertise this Berry property for sale. An advertisement of sale appeared in an issue of the Peninsula Enterprise of Accomack on April 15, 1938, the date set for sale being May 5, 1938. Berry went to see Mrs.

Wessells and by way of inducement promised to make a payment on the debt out of the proceeds of his strawberry crop. This he did not do. He offered no excuse and asked for no further indulgence, nor did he communicate with this creditor. He now says that his reason for failure was that this crop was poor. Default having continued, Mrs. Wessells directed the trustee to re-advertise and to proceed with the sale, and in accordance with this request on June 20, 1938, he wrote and mailed this letter:

"Mr. George R. Berry,
Gargatha, Virginia.

Dear George:
Mrs. Wessells has instructed me to proceed without further delay in the matter of collecting her bond, which is secured by your property. She feels that she has given you ample time in which to make your arrangements to take care of this matter. Mr. Gunter and myself as trustees in the deed of trust have no course left open to us except to advertise the property as requested by Mrs. Wessells. I hope you can find some way to pay off the bond and keep your property without it being published again in the papers this week, but unless it is paid we must advertise it.
With kindest regards and best wishes, I am
Sincerely yours,
HB/LC                              HERBERT BARNES."

Berry says that it was not received. It was not returned to the sender. All of these people live in the same neighborhood; Berry was well known and, measured by common experience, the chances that he did receive it are very great. He said, however, that he did not, and that was a jury question. *Yanago* v. *Aetna Life Ins. Co.*, 164 Va. 258, 178 S. E. 904.

Three days later this property was burned. In it Howard lived and did business there as a renter from his father at $25 a month.

The uncontradicted evidence is that no standard insurance company would have accepted this risk had the status of this trust deed debt been known.

In substance the purpose to sell was never abandoned but was postponed subject to conditions not met.

It is further contended that there was neither proof of loss nor an appraisement.

W. J. Wright is an insurance adjuster and was sent by the defendant company as its representative to Accomack county. He lives in Salisbury, Maryland, and promptly came to Virginia, examined the burned premises, and interviewed both George Berry and his son. He asked that he be furnished an inventory and list of fixtures and goods destroyed. That was later sent him. He came to Accomack county but once. No proof of loss was furnished him, either then or later, and he gave to the Berrys no forms on which it might be written. This is the substance of his testimony.

George Berry said that Mr. Wright came to see him not once but twice, filled out and gave to him and to Howard each one of these forms and said that they should be verified. They were verified and mailed to Mr. Wright at Salisbury in envelopes containing return addresses. They were never acknowledged. Such is the substance of the testimony of George Berry and of his son. That they were sent to Mr. Wright is what might have been expected. Berry had every reason to believe that he represented the company which had sent him down. That they were sent and received was a jury question. We follow their finding. Certain it is that the insurance company did nothing; it resisted payment and still resists it.

No appraisement was ever asked for.

The result of our conclusions is this: The plaintiff can not recover because of his failure to disclose to the insurance agent when his policy was taken out the status of the Wessells debt. There are no other reversible errors in the record.

*Reversed.*

HUDGINS, J., dissenting.

I do not think that a mere failure of an insured voluntarily to inform the insurer, at the time he makes a verbal application for an insurance contract, that, prior to the date of the application, a notice of sale under deed of trust had been given and withdrawn is alone sufficient to avoid payment of the policy in case the property is destroyed by fire.

In maritime insurance any omission to communicate a material fact which insured is under an obligation to disclose will vitiate the policy. This is true even though there may have been no intent to deceive and the omission may have been unintentional or with the belief that the fact is immaterial. "The English and Canadian courts apparently have extended this doctrine generally to insurance upon risks of all natures, but in the United States, the trend of the later decisions as to other than marine risks, notably with reference to fire and life insurance is to require that the nondisclosure of a fact which is not inquired about shall be fraudulent in order that it shall vitiate the policy, * * * .

"Ordinarily in the absence of fraud, a failure of insured to disclose a fact with reference to which no questions are asked is not such a concealment as will avoid a policy, * * * ." 32 C. J. 1271, 1272.

"The better view, * * * , would seem to be that where no inquiries are made, a concealment must be with fraudulent intent, but that intent is immaterial where the concealment relates to a matter with reference to which inquiry is made." 14 R. C. L. 1025.

In other words, the well-settled rule is that failure of the insured to disclose a fact, though material to the risk, will not avoid a fire or a life policy unless such nondisclosure was fraudulent.

The evidence in this case is that the insured informed the insurer that there was an encumbrance on the property. No other information was sought from the insured before the contract was consummated and the policy delivered. The average policyholder does not know whether the fact that his property at his request has been withdrawn from

a forced sale under a deed of trust is material to the risk. Every suspicious circumstance mentioned in the majority opinion is decided in behalf of the insured. The decision is made to turn on the single fact that the accused did not disclose to the insurer that at some time prior to the date of the contract his property had been advertised for sale and the contemplated sale withdrawn at his request. The rule announced is in effect applying the rule of maritime insurance law to a fire policy. This, in my opinion, is against the settled principle which should control.