Richmond

## MUTUAL OF OMAHA INSURANCE COMPANY

### v.

## JAMES E. DINGUS

January 12, 1979.

Record No. 770704.

Present: All the Justices.

*Charles B. Flannagan, II (Woodward, Miles and Flannagan,* on brief), for plaintiff in error.

No brief or argument for defendant in error.

HARRISON, J., delivered the opinion of the Court.

James E. Dingus recovered a judgment in the court below against Mutual of Omaha Insurance Company. The recovery was effected under a disability income policy. Mutual defended upon the ground that there was no valid policy of insurance in effect because of material misrepresentations contained in Dingus' application for insurance.

On October 5, 1972, Dingus signed an application for a policy of insurance from Mutual which would provide him specific benefits in event he should incur certain designated medical expenses. This application, which contained questions to be answered by Dingus, read, in part, as follows:

"2. Have you or any named dependent ever had, or been advised by a physician that you had, or received advice or treatment for:

    (a)  High blood pressure . . .
    (b)  . . . stomach . . . intestinal . . . trouble . . .
    (d)  Mental or nervous trouble . . .

"3. Have you or any named dependent had, or been told you had, or received advice or treatment within the past five years for:

    (a)  any physical conditions or injuries not mentioned above, or (b)  any symptoms of ill health?"

The application reflects that Dingus answered "No" to questions 2(a)(b)(d) and 3(a)(b). Over Dingus' signature and the statement of James Shortt, an agent of Mutual, that he had "truly and accurately recorded in this application the information supplied by the applicant", is the following certification:

"Having read the completed application or having had it read to me, I realize that any false statement or misrepresentation therein may result in loss of the coverage under the policy, and I represent that my above answers and statements are true and complete to the best of my knowledge and belief. . . ."

Pursuant to the application, Mutual issued and delivered to Dingus its disability income policy. The second paragraph on the first page of the policy contains the following language printed in red letters:

"IMPORTANT NOTICE

"Please read the copy of the application attached to this policy. Carefully check the application and write to the Company at Omaha,

Nebraska, within ten days if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. This application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete. In the event you are not satisfied with the policy for any reason, it may be returned within ten days after receipt and any premium paid will be refunded."

On November 1, 1972, Mutual mailed to Dingus at his correct address its reverification letter containing the following language:

"Your policy has been issued relying upon the information contained in your application. A photocopy is attached and is made a part of the policy.

"It is very important to you — and to us — that your application contains complete and accurate information. Enclosed is a photocopy of your application and we ask that you review it carefully and if incomplete in any respect provide us with any additional information. Factual and well-defined answers to all of the questions now will prevent misunderstandings at a later date."

On March 27, 1973, Dingus had a right inguinal hernia operation and, following his discharge from the hospital, applied to Mutual for benefits under his policy. In the routine processing of the claim, the company gained information about Dingus' prior health history and health problems.

Specifically, when Dingus was admitted to the Bristol Memorial Hospital, Bristol, Tennessee, on March 26, 1973, his medical history was taken by Dr. Kermit Lowry and recorded, in pertinent part, as follows:

"This is a 44-year-old, white male admitted 3-26-73. The patient has a right inguinal hernia. He had noticed some discomfort in that area about four years ago when he was working. . . .

"PAST HISTORY: . . . When he was six or seven years old, he had acute appendicitis and apparently had a ruptured appendix which was drained. His appendix apparently has never been removed. He was in the hospital here several years ago, admitted by Drs. Cowan and Vance and at that time had a nervous stomach with ulcer-type symptoms. . . .

"REVIEW OF SYSTEMS:
"Cardiovascular:   He has been told on several physical examinations that he had high blood pressure, but he has never been on treatment. No heart murmurs. There is a strong family history of heart disease.

"PHYSICAL EXAMINATION:   A well developed, somewhat obese, white male of approximately stated age in no acute distress, appearing neither acutely nor chronically ill. Temperature 98.6°, pulse 76, blood pressure 180/100.

"DIAGNOSIS:   Right inguinal hernia.
          Exogenous obesity, moderate."

The secretary of medical records of the Bristol Memorial Hospital advised counsel for appellant on March 27, 1974, that James E. Dingus had been a patient in Bristol Memorial in June, 1958, and in March, 1973. Regarding Dingus' 1958 hospitalization, she certified Dr. B. Y. Cowan's findings to have been as follows:

"Final Diagnosis:   Gastritis, hemorrhagic.

"Chief Complaint: Patient stated that for the past couple of years, he has had frequent epigastric pains and heartburn. During the past six months, these symptoms have been markedly aggravated and of very frequent occurence [sic]. Yesterday, he vomited bright red blood.

"Patient was in the hospital six days. From information learned, it was felt that psychiatric counselling was definitely advisable and Dr. Hogan was asked to see the patient. Dr. Hogan felt that the patient was definitely psychopathic.

"Dr. Cowan felt that the patient had some history of peptic ulcer but, with the chronic alcoholic intake, his problem was alcoholic hemorrhagic gastritis."

Dr. W. A. Davis of Dante, Virginia, was asked if he had seen Dingus for any reason other than the hernia and he responded by written report dated July 23, 1973, as follows:

"Hemetemesis in 1958 with G. I. Series showing only small diverticulum in the third portion of the duedenum [sic], no ulcer. Hemetemesis in 1960 with G. I. showing no ulceration. Blood pressure was 160/100 and 140/110 in 1964 but was 140/90 in August 1971 and 158/94 in March 1973 without treatment. Routine lab work has been normal. There has been treatment for a few minor illnesses and minor injuries, with no sequelae. Copy of pulmonary evaluation enclosed."

The evidence on behalf of Mutual is that the policy was issued on the basis of the information contained in the application which, on its face, indicated no problems whatsoever concerning Dingus' insurability. Charles Burke, Senior Underwriter for the southeast region of Mutual, testified that had Dingus divulged in his applica-

tion the information which the company obtained following his hernia operation, the policy would not have been written. Burke said that had Dingus disclosed the fact that he had been hospitalized in 1958 with ulcer-type symptoms, or that he had been told by physicians that he had high blood pressure, or that he had been spitting up blood in 1958 and 1960, or that he had been examined for a hernia in 1971, the company would have pursued this information before issuing any policy. Burke stated the company would have written to the doctors and obtained medical reports and information concerning the true condition of the applicant.

Dingus testified that he advised the company's agent that "I had been hospitalized in 1957 or '58 for bleeding ulcer, and he said, 'That's too far back.' He said, 'That don't make any difference.' He said, 'This is five years.' " Shortt denied that Dingus told him of the 1958 hospitalization. The agent testified that Dingus answered "No" to all the medical history questions and that he accurately recorded all the answers on the application.

Dingus admitted that he did not read the application at the time he signed it, and that he did not read the policy when it arrived. He said he did not "remember getting such [reverification] letter". The position of Mutual is that Dingus had knowledge, actual or constructive, prior to his hospitalization in March, 1973, that facts material to the risk were falsely stated in his application for insurance.

The court, overruling a motion by Mutual to strike and grant it summary judgment, submitted the case to the jury after having granted certain instructions, including the following:

> "The Court instructs the Jury that, if they believe from the evidence that the Plaintiff, James E. Dingus, entered into the Health and Accident Insurance Policy in question with the Defendant, Mutual of Omaha Insurance Company, on the 5th day of October, 1972, and in his application answered correctly all of the material questions propounded to him to the best of his knowledge and belief, and thereafter became entitled to the benefits as provided in said policy, you shall find your verdict in favor of the Plaintiff, James E. Dingus."

To escape liability under the policy, Mutual of Omaha had the burden of clearly proving that Dingus' answers in his application were material to the risk when assumed and were untrue. Virginia Code § 38.1-336. *Mutual of Omaha v. Echols' Adm'rs*, 207 Va. 949, 154 S.E.2d 169 (1967); *Chitwood v. Prudential*, 206 Va. 314, 143 S.E.2d 915 (1965).

A fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy. "Representations in an application for a policy of insurance should not only be true but full. The insurer has the right to know the whole truth. If a true disclosure is made, it is put on guard to make its own inquiries, and determine whether or not the risk should be assumed." 206 Va. at 318, 143 S.E.2d at 918, quoting *Inter-Ocean Ins. Co. v. Harkrader*, 193 Va. 96, 100-101, 67 S.E.2d 894, 897 (1951). It is an accepted practice of insurance companies to issue health and accident policies based upon applications without medical examinations. Such companies have a right to be in possession of the true facts and correct information when they make a determination whether or not a risk should be assumed.

Evidence introduced by Mutual disclosed not only a six-day confinement of Dingus in the Bristol Memorial Hospital in 1958, but numerous examinations by physicians, elevated blood pressure, chronic addiction to alcohol, hemétemesis in 1958 and 1960, examination for hernia in August, 1971, and a statement by Dingus, made in March, 1973, to an examining physician, that "[h]e had noticed some discomfort in that area [area of the hernia] about four years ago when he was working". In light of this history of medical problems that would have appeared had a full disclosure been made on the application, it is inconceivable that Mutual would have issued its policy to Dingus without investigating further or requiring a current medical examination. The evidence clearly proves that insured's application for insurance contained answers and statements which were untrue and material to the risk when assumed.

Dingus testified that he answered correctly all questions propounded to him by the company's agent, and that it was the agent who filled in the various answers to the interrogations

contained in the application. In the court below* appellee relied upon *New York Life Ins.* v. *Eicher*, 198 Va. 255, 260, 93 S.E.2d 269, 273 (1956), where it was said:

> " 'The view generally taken is that the agent in making out the application acts for the insurer, and that the insurer is therefore estopped to assert the mistake or, as has been said in some cases, the mistake is deemed to be waived by the insurer'. . . .", quoting from *Gilley* v. *Union Life Ins. Co.*, 194 Va. 966, 974, 76 S.E.2d 165, 170 (1953).

However, as was pointed out in *Eicher*:

> "[U]nder the rule of the *Gilley* case, the insurer in an action on an insurance policy can not avoid liability on the ground that false answers appear in the application, if it is shown that: (1)   the false answers contained in the application were inserted by an agent of the insurer, and (2)   the answers to the interrogations contained in the application were truthfully given without fraud or collusion, and (3)   the applicant had no knowledge, actual or constructive, that his application contained false answers."

It is the position of appellant that Dingus had actual or constructive knowledge that his application contained false, material answers and therefore he should not be allowed to profit thereby. It argues that the company should not be estopped by the knowledge or conduct of its agent, if such in fact existed, from asserting the falsity of such answers as a bar to its liability on the policy. Furthermore, it points to our holding in *Eicher* that in the absence of peculiar circumstances, there is a rebuttable presumption that the applicant has read the application which he signed, and he is

---

* Appellee filed no brief on appeal.

prima facie charged with knowledge of its contents. 198 Va. at 260, 93 S.E.2d at 273.

In the case under review, it has been established that the answers given on an application signed by Dingus were false and material. It was incumbent upon him to rebut the presumption that he knew his application contained false answers and in rebutting this presumption, it was incumbent upon Dingus to prove that the answers were truthfully given by him to the agent Shortt, who incorrectly recorded them.

Dingus did not testify that he advised the agent of any of his health problems, examinations, or treatments, other than his 1958 hospitalization for a bleeding ulcer. Dingus did not tell the agent of his various elevated blood pressure readings, his hemetemesis in 1960 or his chronic alcoholic intake; that his problem had been diagnosed as "alcoholic hemorrhagic gastritis"; that he had psychiatric counseling and had been diagnosed as psychopathic; or that four years prior to his hernia operation he had experienced discomfort in the area where the hernia ultimately occurred.

Even if we assume that the company's agent was told of Dingus' 1958 hospitalization but did not accurately record this fact on the application, this alone does not establish that Dingus gave truthful answers to the various other questions asked in the application, or that he did not know, aside from the omission of any reference to his 1958 hospitalization, that the application contained false answers. We find the evidence in the record insufficient to rebut the presumption that the answers recorded in the application were those given by the insured and that he knew the application contained false answers.

Accordingly, the verdict of the jury will be set aside, the judgment reversed, and final judgment entered here for Mutual of Omaha Insurance Company.

*Reversed and final judgment.*