544 So.2d 664 (1989)
WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY Plaintiff-Appellee,
v.
Zan HYMEL and Mrs. Jessie J. Hymel Defendants-Appellants.
No. 88-160.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
Rehearing Denied June 29, 1989.
*665 Donald R. Jory, Jennings, for plaintiff-appellee.
Bennett R. LaPoint, Lake Arthur, Neblett, Beard & Arsenault, Richard W. Beard, Alexandria, for defendant-appellant.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
STOKER, Judge.
This is a concursus proceeding filed by Woodmen of the World Life Insurance Society (Woodmen) for distribution of the life insurance proceeds from a policy on the life of Billy Wayne Hymel. The concursus defendants are Zan Hymel, Billy Wayne's widow, and Jessie Hymel, Billy Wayne's mother. Both Zan and Jessie Hymel have appealed suspensively from the judgment of the trial court.

FACTS
Prior to December 9, 1985 Billy Wayne Hymel purchased a life insurance policy bearing certificate No. 4332690, with a face amount of $25,000 and naming Zan Hymel as beneficiary. On December 9, 1985 Billy Wayne executed an insurance application to increase the face amount of the policy to $80,000 and to convert the policy into an "Adjustable Life Policy," naming as his primary beneficiary Zan Hymel. Subsequently, but before April 24, 1986, Billy Wayne and Zan physically separated.
On April 24, 1986 Billy Wayne applied to Woodmen to increase the amount of insurance by an additional $150,000. On that application he named Jessie Hymel as his primary beneficiary. That application bears Certificate No. 4383350. Subsequently, a new policy was issued under Certificate No. 4332690 with a face amount of $230,000 and listing Jessie Hymel as the primary beneficiary.
Billy Wayne Hymel died on July 11, 1986.
In response to the conflicting claims of Zan and Jessie Hymel to the insurance proceeds, Woodmen invoked this concursus proceeding and deposited the proceeds in the registry of the court. Zan Hymel filed a reconventional demand against Woodmen for penalties and attorney's fees for its arbitrary and capricious failure to pay the insurance proceeds to her. Zan Hymel also filed a cross-claim against Jessie Hymel for any proceeds received by Jessie under Certificate No. 4383350.
Jessie Hymel also filed a reconventional demand against Woodmen for negligence in effecting the change of beneficiary and praying for damages to the extent that she did not receive the full $230,000 of proceeds.
The trial court found that there were essentially two life insurance policiesone for $80,000 of which Zan Hymel was beneficiary and an "additional insurance" for $150,000 of which Jessie Hymel was beneficiary. The trial court awarded the insurance proceeds in accordance with this finding after deducting costs of the proceeding from the insurance proceeds. The court dismissed the claim of Zan Hymel against the community for one-half of the premiums paid or one-half of the cash value of the policy, finding the proceeds were not *666 part of the community and such a claim would be more properly against the decedent's estate. Zan's reconventional demand against Woodmen was also dismissed since Woodmen's failure to pay was not without just cause and Woodmen properly invoked the concursus proceeding. Jessie Hymel's reconventional demand against Woodmen was severed from the concursus proceeding.
The judgment of the trial court has been appealed suspensively by both Zan and Jessie Hymel. We reverse in part.

OPINION
On appeal, both appellants raise issues as to the admissibility of parol evidence to determine the intent of the insured and the applicability of the "substantial compliance" jurisprudence and the "strict construction rule" to determine whether a change of beneficiary was effectuated by Billy Wayne Hymel. We find the case can be resolved without resort to parol evidence and, accordingly, will not discuss the propriety of its use in this case. We proceed, therefore, with discussions of the insurance contract itself and of the beneficiary under the contract.

THE INSURANCE POLICY
The trial court found that there are essentially two insurance policies involved since there are two different certificate numbers. This finding is not correct.
On December 31, 1985 a life insurance policy was issued by Woodmen to Billy Wayne Hymel under Certificate No. 4332690 with a face amount of $80,000. The contract of insurance includes the following provision defining the contract itself:
"CONTRACT
The contract between the member and Woodmen consists of:
 This certificate, including endorsements, additional applications, and amendments, if any.
 The written application, a copy of which is attached to this certificate.
 The Articles of Incorporation of Woodmen.
 The Constitution and Laws of Woodmen.
 The Articles of Incorporation and the Constitution and Laws and any amendments to them are binding on the member and the beneficiary but will not take away or reduce any of the benefits of this certificate.
 This certificate is granted in consideration of the application and payment of the initial premium."
The application for insurance is appended to this contract. Zan Welch Hymel is listed as primary beneficiary on this application. The contract also provides for increases in face amounts as follows:
"FACE AMOUNT CHANGES
Changes in the face amount will become effective at the beginning of the month following Woodmen's approval of the change. After the first certificate anniversary, the member may change the face amount by written request subject to the following:"

* * * * * *
"3. Any increases will be subject to the following:
a. Increases must be applied for on a new application form.
b. Evidence of insurability satisfactory to Woodmen must be provided.
c. The monthly deductions for the increase will be deducted from the cash value."
On April 24, 1986 Billy Wayne Hymel filed an application for an increase in the face amount of his policy of $150,000. The application bears Certificate No. 4383350. In this application Billy Wayne named Jessie Conner Hymel, his mother, as primary beneficiary and Heather Noel Trahan, his niece, as alternate beneficiary. Section D of the application, "The Applicant's Agreement," has a handwritten note on it, "Face Amount Increaseuse existing cash value. CTF # 4332690." The date and applicant's signature follow this section. This application was appended to the insurance policy.
A Certificate Amendment issued June 4, 1986 and effective July 1, 1986, bearing *667 Certificate No. 4332690, was appended to the original insurance policy. The amendment shows an increase in the policy's face amount by $150,000 for a total of $230,000.
A new amended insurance policy was subsequently issued bearing Certificate No. 4332690 and having a face amount of $230,000. The application for increase in face value was appended to this policy.
It is clear that the application for increase in the face value increased the original policy by $150,000. It did not create a new, separate insurance policy or contract for $150,000. The fact that the application for increase in face value has a different certificate number stamped on the first page appears to have no bearing on the fact that the original policy was increased by this application. The Certificate Amendment bears the same number as the original certificate.
Moreover, the $230,000 policy has only one annual planned premium. The rule for determining the severability of contracts is stated in Smith v. Washington Nat. Ins. Co., 56 So.2d 769 at 771 (La.App. 2d Cir. 1952) as follows:
"The general rule stated in 17 C.J.S., Contracts, § 334, page 790, as to severability, is as follows: `A test of severability which has frequently been applied is to the effect that, if the consideration is single, the contract is entire, but if the consideration is either expressly or by necessary implication apportioned, the contract will be regarded as severable, although this test will not necessarily prevail over other provisions of the contract showing a contrary intent of the parties. So, where the portion of the contract to be performed by one party consists of several and distinct items, and the price to be paid is apportioned to each item according to the value thereof and not as one unit in a whole or a part of a round sum, the contract will ordinarily be regarded as severable; and this rule applies, although the contract may in a sense be entire, if what is to be paid is clearly and distinctly apportioned to the different items as such and not to them as parts of one whole.'"

* * * * * *
"It is within legal sanction for contracting parties to include within a single policy two separate contracts of insurance and it is permissible for a single contract of insurance to be embraced within more than one self-styled policy. In deciding if the agreement or agreements of the nature referred to possess severability, a determining factor frequently resorted to is whether the premium is expressed as a single amount for the whole policy or is apportioned to the various benefits provided. Equitable Life Assur. Soc. v. Deem, 4 Cir., 1937, 91 F.2d 569, writ of certiorari denied in, 1937, 302 U.S. 744, 58 S.Ct. 146, 82 L.Ed. 575; Malloy v. New York Life Ins. Co., 1 Cir., 1939, 103 F.2d 439, writ of certiorari denied in 1939, 308 U.S. 572, 60 S.Ct. 86, 84 L.Ed. 480; New York Life Ins. Co. v. Davis, D.C., 1933, 5 F.Supp. 316; Guardian Life Ins. Co. v. Barry, 1937, 213 Ind. 56, 10 N.E.2d 614; Armstrong v. Illinois Bankers Life Ass'n, 217 Ind. 601, 29 N.E.2d 415, 131 A.L.R. 769; Peek Estate v. New York Life Ins. Co., 1928, 206 Iowa 1237, 219 N.W. 487; Chattanooga Sewer Pipe Works v. Dumler, 1929, 153 Miss. 276, 120 So. 450, 62 A.L.R. 999; Rosso v. New York Life Ins. Co., 1930, 157 Miss. 469, 128 So. 343, 69 A.L.R. 883."
In this case the $230,000 policy as issued is indivisible, with the whole premium balanced against the whole insurance. Therefore, it was manifest error for the trial court to divide the proceeds of the policy as if there were two insurance policies. We must now turn to consideration of who is the beneficiary of this policy.

THE BENEFICIARY
The strict construction rule, which is generally used in Louisiana, requires that the change of beneficiary clause included in an insurance contract be strictly construed in order to determine whether the insured has effected a change of beneficiary. In some instances, however, the *668 courts have permitted "substantial compliance" with the clause to suffice for a change of beneficiary. Substantial compliance is usually invoked in cases where the original beneficiary should not be entitled to the proceeds because he or she has interfered with the process of change. See W.S. McKenzie and H.A. Johnson, Louisiana Civil Law Treatise: Insurance Law and Practice § 256.
Two very similar cases to the one before us are Bland v. Good Citizens Mut. Ben. Ass'n, 64 So.2d 29 (La.App. 1st Cir.1953) and Philadelphia Life Ins. Co. v. Whitman, 484 So.2d 266 (La.App. 3d Cir.1986).
In Bland, the court discussed the right of the insured to change the beneficiary as follows:
"In the agreement or arrangement between the insurance company and the Grand Lodge is found the following:
"`Members May Change Beneficiary. Any member while insured hereunder, may, from time to time, change the Beneficiary without notice to or consent of said Beneficiary by filling [sic] written notice thereof through the Grand Lodge with the Home Office of the Company accompanied by the Certificate of Insurance for endorsement. Such change shall take effect only upon endorsement of the same on the certificate by the Company.'
"A like provision is found on the face of the certificate reading as follows:
"`The beneficiary may be changed in accordance with the terms of said policy, by the Member at any time while the insurance on his or her life is in force, by notifying the Company through the Grand Lodge. Such change shall take effect only upon endorsement of the same on this certificate or the issuance of a new certificate.'"
The insured in Bland designated one of his daughters as the beneficiary of his life insurance. Subsequently, in an application for issuance of a duplicate policy (because of loss of the original policy) the insured named his stepdaughter as primary beneficiary. On the death of the insured, the daughter claimed the proceeds and attacked the "Application for Membership" as insufficient to change the beneficiary. The court held that the application was sufficient to change the beneficiary and reasoned:
"It is now well established in our jurisprudence that the technical requirements in connection with applications for change of beneficiary is for the benefit of the insurer and such requirement may be waived by the insurer and that no person may object to such waiver except one who has acquired a vested interest in the proceeds of the policy. In the case at bar, Josephine Wilson Bland, the plaintiff, did not have a vested interest in the policy because there is a provision in the certificate of insurance permitting a change of beneficiary until such certificate has become due and payable. LSA-R.S. 22:546.
Furthermore it is clear in the case at bar that the insured did substantially all that lay within his power to do to effect a change in the beneficiary, and which was accepted as a full compliance of the requirements by the insurer, and was a waiver by the insurer of any technical requirements."
In Whitman, supra, the life insurance policy contained the following provision for change of beneficiary:
"`BENEFICIARY DESIGNATION. Each Employee shall have the right to designate a Beneficiary upon becoming insured under this Group Policy and to revoke at any time any previous designation and make a new designation by giving through the Owner written notice to the Company at its Home Office. Such revocation and new designation shall take effect as of the date the Employee signed the notice, but without prejudice to the Company on account of any payment made by it before receipt of such notice.'"
The insurer sent the insured a form questionnaire which contained the following question:
"`8. We show BARBARA ANN WHITMAN as your beneficiary. If there is a *669 change in your beneficiary designation, please let us know.'"
In response to question 8, the insured wrote "Hilda Richard." The insurer subsequently mailed the insured a beneficiary change card which was never executed because it was received after the insured's death. The court held that, since no particular form was required by the insurer to change the beneficiary, the answered questionnaire was sufficient to effectuate the change. The court reasoned as follows:
"Where a policy of life insurance reserves to the insured the right to revoke at any time a previous designation of beneficiary and to make a new designation of beneficiary, the beneficiary acquires no vested interest in the policy or its proceeds during the lifetime of the insured. Further, it is settled that substantial compliance by an insured with policy provisions for a change of beneficiary will be given effect where the intention of the insured to make a change is manifest and the change of beneficiary is not contrary to law and does not affect vested rights. Smith v. American National Insurance Company, 25 So.2d 352 (La.App. 2d Cir.1946) and cases therein cited. It is equally well settled that the internal procedures established by the insurer in connection with applications for a change of beneficiary are mainly for the benefit of the insurer and do not operate to provide an exclusive method for a change of beneficiary. Metropolitan Life Insurance Company v. Richardson, 27 F.Supp. 791, appeal dismissed, 109 F.2d 339 (5th Cir.); Bland v. Good Citizens Mutual Benefit Association, 64 So.2d 29 (La.App. 1st Cir.1953).
In the instant case, the policy provision above quoted requires no particular form for a change of beneficiary other than that the insured give written notice to the company at its home office. Further, under the express terms of the policy, the revocation and new designation of beneficiary takes effect as of the date the insured signed the notice. In our view, the completed questionnaire which was signed by DeMarcy on April 26, 1983, and forwarded to the insurer the same day, clearly satisfied Philadelphia's policy requirement for revoking the previous designation of beneficiary and designating Hilda Richard as the new beneficiary. The completed questionnaire evidences the clear intent of the insured to effect a change of beneficiary as of the date of its execution. Such change was not contrary to law and did not affect vested rights. The circumstance that the change of beneficiary form furnished by the company and received following the death of DeMarcy was never executed is of no moment. Metropolitan Life Insurance Company, supra; Bland, supra."
In the case before us, the insurance contract states that the beneficiary will be as designated in the application and provides for change of the beneficiary as follows:
"BENEFICIARY. The beneficiary of this certificate will be as shown in the application. The member can change the beneficiary at any time by sending a signed and dated written request to the Home Office. When the change has been received at the Home Office it will take effect as of the date the request was signed. However, such change will not apply to any action taken or payment made by Woodmen before the change is received at the Home Office. No beneficiary will have any rights in this certificate during the life of the member."
As in Bland and Whitman, no specific form is required for the written request to the insurer. Under the express terms of the policy the change was effective as of the date on the written notice. Moreover, Zan Hymel did not have a vested interest in the proceeds of the policy because of the provision in the contract permitting a change of beneficiary by the insured and stating the beneficiary has no rights in the certificate during the life of the insured.
The completed application, signed and dated by Billy Wayne Hymel, clearly satisfied Woodmen's policy requirement for revoking the previous designation of Zan Welch Hymel as beneficiary and designating Jessie Conner Hymel as the new beneficiary. The strict construction rule for interpreting *670 the change of beneficiary provision is also satisfied because neither the insurance contract nor Woodmen itself required a specific form to be completed in order to change the beneficiary. In any case, the internal procedures established by the insurer in connection with applications for a change of beneficiary are mainly for the benefit of the insurer and do not operate to provide an exclusive method for a change of beneficiary. See Bland, supra, and Whitman, supra. The application designation was accepted as full compliance of the requirements by the insurer.
Finally, the intent of Billy Wayne Hymel to change his primary beneficiary is clear from the application itself, the circumstance of the prior separation between Billy Wayne and Zan and the fact that Zan was not even named as alternate beneficiary.
Defendant Zan Hymel cites two cases as dispositive of the case before us under the strict construction rule: Morein v. North American Co. for Life & Health Ins., 271 So.2d 308 (La.App. 3d Cir.1972), writ refused, 273 So.2d 845 (La.1973), and Wickham v. Prudential Ins. Co. of America, 366 So.2d 951 (La.App. 1st Cir.1978). We do not find these cases persuasive. In Morein, a written request for change of beneficiary was never sent to the home office of the company, as required by the policy. In Wickham, the insured failed to comply with the policy requirement for change of beneficiary of submitting the policy with the request in order that the policy may be endorsed. The change had no effect until the policy was endorsed. In the case before us, all policy requirements were met in order to change the beneficiary. Therefore, the circumstances in the cases are not the same.
We hold that Jessie Hymel is entitled to the full proceeds of the $230,000 life insurance policy as the sole primary beneficiary.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part and it is now ordered, adjudged and decreed that there be judgment in favor of Jessie Hymel declaring her the beneficiary of the Woodmen of the World Life Insurance Society Policy No. 4432690, which includes the "Certificate" No. 4383350 and as such is entitled to all funds deposited in the registry of the court, i.e., Two Hundred Thirty Thousand Dollars ($230,000), plus any accrued interest which may have been earned, less the costs of these proceedings, both at the trial level and on appeal. Woodmen of the World Life Insurance Society is relieved of all further liability in connection with the policy and amendment described above.
AFFIRMED IN PART; REVERSED IN PART; AMENDED AND RENDERED.