**Shirley B. GUSTAFSON, Plaintiff,**

v.

**SOUTHLAND LIFE INSURANCE COMPANY, Defendant.**

Civ. A. No. 2:94cv858.

United States District Court,
E.D. Virginia,
Norfolk Division.

May 4, 1995.

---

Robert J. Haddad, Shuttleworth, Ruloff, Giordano & Kahle, Virginia Beach, VA, for plaintiff.

Jeff W. Rosen, Adler, Rosen & Peters, P.C., Virginia Beach, VA, for defendant.

*OPINION and FINAL ORDER*

REBECCA BEACH SMITH, District Judge.

Plaintiff Shirley Gustafson brought an action against Defendant Southland Life Insur-

ance Co. ("Southland") for failure to pay life insurance proceeds on a $150,000.00 policy issued on the life of Plaintiff's decedent, Donald Gustafson ("Gustafson"). Am.Compl. Defendant filed a motion for summary judgment under Fed.R.Civ.P. 56(c) to prevent Plaintiff's recovery under the $150,000.00 policy. On March 13, 1995, the Court heard oral argument on Defendant's motion for summary judgment and took the matter under advisement. The motion is now ready for determination.

## I. Facts

In February of 1993, Plaintiff's decedent, Gustafson, sought life insurance coverage in the amount of $150,000.00 from Southland. In order to obtain the policy, Gustafson completed an application, answered questions asked by Southland's agent, and submitted to a physical examination. Gustafson designated Plaintiff as the beneficiary of this policy. On March 22, 1993, Defendant Southland approved but did not issue the policy.

On March 25, 1993, Gustafson sought treatment from Dr. Monti for a cough. As part of his examination, Dr. Monti gave Gustafson a chest x-ray. The next day, Dr. Monti contacted Gustafson, informed him that his chest x-ray was abnormal, and recommended that Gustafson immediately see a pulmonologist, Dr. Scott. On March 29, 1993, Gustafson sought treatment from Dr. Scott, who gave Gustafson a blood test. Even though the results of the blood test were normal, Dr. Scott then ordered a CAT scan of Gustafson's chest. Around April 2, 1993, Dr. Scott reported to Gustafson the abnormal results of the chest scan and recommended that Gustafson undergo a bronchoscopy.

On April 4, 1993, Gustafson's first full premium was due, and Gustafson sent payment to Southland. Consequently, on April 5, 1993, Southland officially issued the $150,000.00 policy. On April 7, 1993, Gustafson underwent the bronchoscopy. After Dr. Scott received the pathology report from the bronchoscopy on April 12, 1993, Dr. Scott personally informed Gustafson and Plaintiff that Gustafson had lung cancer.

On May 14, 1993, Gustafson applied to increase the benefits of his policy from $150,000.00 to $250,000.00. Again, Gustafson designated Plaintiff as the beneficiary of the policy. In addition, Gustafson made Plaintiff the owner of this policy. A month later, Gustafson paid the first premium for the increased benefits. In November 1993, Gustafson died from lung cancer. Plaintiff subsequently requested that Defendant pay her benefits, although Plaintiff did not specify whether she was seeking $150,000.00 or $250,000.00 in benefits. Defendant simply denied Plaintiff's request for any amount. Plaintiff initiated this lawsuit in order to recover the proceeds under the $150,000.00 policy.

## II. Standard of Review

The court may grant summary judgment on an issue only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court reviews the record as a whole and in the light most favorable to the nonmoving party; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The parties do not contest the facts of Gustafson's medical treatment in early 1993, nor do they dispute the facts concerning Gustafson's acquisition of the original $150,000.00 insurance policy and the procurement of the increase in benefits. As a result, the Court resolves as a matter of law the issue of whether Plaintiff has a right to the proceeds under any policy issued on Gustafson's life by Defendant Southland.

## III. Analysis

### A. The $250,000.00 Policy

The first issue in this case is whether the $250,000.00 policy supplanted the $150,000.00 policy or whether separate contracts, consisting of the $150,000.00 policy and the $100,000.00 application for an increase in benefits,

exist. In response to Plaintiff's request for proceeds, Defendant argues that only the $250,000.00 policy exists. Defendant further asserts that Gustafson defrauded Defendant by providing false answers on the May 1993 application and that the $250,000.00 policy is voidable at Defendant's option. Plaintiff maintains that language in the original $150,000.00 policy, which prevents a change in death benefits before the policy has been in effect for one year, voids Plaintiff's request for an increase in benefits and leaves only the $150,000.00 policy outstanding. The Court addresses whether the $250,000.00 policy is entire or severable.

■ "Primarily the question of whether a contract is entire or severable is one of intention, and to ascertain the intention regard is to be had to the subject matter of the agreement, the situation of the parties and the object they had in view at the time and intended to accomplish." *O'Quinn v. Looney*, 194 Va. 548, 551, 74 S.E.2d 157, 159 (1953); *accord Eschner v. Eschner*, 146 Va. 417, 422, 131 S.E. 800, 802 (1926). In interpreting the intentions of the parties, if the intent of the parties is expressed in the writing that embodies their agreement, that intent controls. *O'Quinn*, 194 Va. at 552, 74 S.E.2d at 159. Therefore, the Court looks to the agreement between the parties for evidence of severability.

■ The $250,000.00 policy does not contain explicit language stating that the new policy has replaced the former one. However, the cover page of the policy designates it as one for $250,000.00. In addition, the $250,000.00 policy utilizes the original policy number and references the original effective date of April 5, 1993. These considerations support that the $250,000.00 policy simply replaced the $150,000.00 policy and that the $250,000.00 policy is the only one outstanding.

The type of consideration, in this case premium payments, made under the policy may reveal whether the contract is entire or severable. *See Woodmen of World Life Ins. Soc. v. Hymel*, 544 So.2d 664, 667 (La.Ct. App. 3d Cir.), *cert. denied*, 551 So.2d 629 (La.1989); *see also Eschner*, 146 Va. at 422, 131 S.E. at 802 (concluding that contract was entire because parties did not intend to divide consideration among various promises). In *Hymel*, the insured applied for an increase in benefits and named a different beneficiary on the application for the increase. *Hymel*, 544 So.2d at 665, 666. After the insured's death, the original beneficiary and the new beneficiary disputed whether the application for the increase in benefits produced an entirely new contract that replaced the first policy or whether the increase in benefits operated as a second, distinct policy. *Id.* at 665, 667. In resolving this dispute, the court in *Hymel* focused on the consideration paid after the application for the increase in benefits. *Id.* at 667. Because the insured made single premium payments under an entirely new contract, the court in *Hymel* concluded that the new policy replaced the old policy and represented the entire agreement between the parties. *Id.*

The $250,000.00 policy does not apportion premium payments between the original policy and the increase in benefits. Instead, the $250,000.00 policy, like the new policy in *Hymel*, contains a single schedule of premium payments. In accordance with this schedule, the parties acknowledge that Gustafson made the initial premium payment in June, 1993, in the amount specified by the $250,000.00 policy. Based on this fact, as well as other aspects of the policy mentioned above, the Court finds that the $250,000.00 policy encapsulates the entire agreement between the parties.

Plaintiff relies on the following statement to argue that the $150,000.00 policy still exists: "[w]here the terms of an agreement are doubtful or uncertain, the interpretation placed thereon by the parties themselves is entitled to great weight and will be followed if that may be done without violating applicable legal principles." *O'Quinn*, 194 Va. at 552, 74 S.E.2d at 159. To demonstrate that Defendant has interpreted the contracts as severable, Plaintiff refers to a statement in an inter-office memorandum made by Jon Gilpatrick, chief underwriter for Defendant, after Gustafson died and after Plaintiff made a claim for the insurance proceeds, that Defendant was contemplating making payments on the $150,000.00 policy but not on the

$250,000.00 policy. Gilpatrick Depo., Pl.'s Ex. B at 10–11; Pl's Ex. I. First, the Court does not regard this internal memorandum as representing the Defendant's intention on the question of whether the $250,000.00 policy is entire or severable. Rather, the internal memorandum initially addressed the question, which was then considered further. Gilpatrick Depo., Pl.'s Ex. B at 11. After additional information became available, Gilpatrick recommended denying payment on both claims. *Id.* Second, the Court need not interpret statements made by the parties outside of their agreement, because the Court can determine the intention of the parties on severability from the four corners of the $250,000.00 policy.

Plaintiff also stresses that the policy contains a "Changing Your Coverage" clause, which prevented the $250,000.00 contract from coming into existence. That clause reads:

> You may elect to change the coverage of this policy or exchange for a different policy. To make a change, send us a written request. We may request the policy to make the change.

> After the policy has been in effect for more than one year, you can increase or decrease the face amount or change the death benefit plan type in effect.

Pl.'s Ex. J. Defendant's chief underwriter, Jim Leskovin, stated that this language means that the benefit cannot be increased or decreased until a year after the policy has been in effect. Leskovin Depo., Pl.'s Ex. H at 23.

■ In Virginia, however, parties can mutually assent to modify a contract. *See Stanley's Cafeteria Inc. v. Abramson,* 226 Va. 68, 72, 306 S.E.2d 870, 872 (1983) (finding unilateral correspondence by one party insufficient for modification by mutual assent). In this case, Plaintiff submitted a new application in May, 1993 and paid the increased premium in June, 1993. Defendant, in effect, waived the

year "grace" period for changing the death benefit by accepting the increased premium payment, issuing the new policy with the same policy number, and dating the new policy April 5, 1993, the effective date of the original $150,000.00 policy. The steps taken by Gustafson and Defendant to modify the contract reflect bilateral, rather than unilateral actions, and the Court finds that the parties, by mutual assent, changed the $150,000.00 policy to increase the death benefit to $250,000.00. Consequently, the Court finds that the $250,000.00 policy superseded the $150,000.00 policy and that the $150,000.00 policy no longer exists.

■ An insurance company can deny coverage based on material misstatements made in order to obtain coverage. *See Mutual of Omaha Ins. Co. v. Dingus,* 219 Va. 706, 250 S.E.2d 352 (1979); *New York Life Ins. Co. v. Eicher,* 198 Va. 255, 93 S.E.2d 269 (1956). In *Dingus,* in order to deny coverage based on material misstatements, the insurance company had to show that the statements were material to the risk and untrue. 219 Va. at 713, 250 S.E.2d at 355. A fact is material to the risk "if that fact would reasonably influence the company's decision whether or not to issue a policy." *Id.*

■ Plaintiff admits that Gustafson knowingly provided false answers in May 1993 on his application for increased benefits.[1] Pl.'s Br.Opp.Def.'s Mot.Summ.J. at 7. In addition, the parties agree that Gustafson's failure to admit having been diagnosed with lung cancer would influence the Defendant's decision whether or not to issue a life insurance policy. In summary, the Court agrees with Defendant that it has properly denied coverage under the $250,000.00 policy and that it has properly voided the contract by returning the premium payments made by Gustafson to Plaintiff.

## B. The $150,000.00 Policy

■ Even assuming *arguendo* that the original $150,000.00 policy does exist, Defen-

---

1. Even if Plaintiff did not admit this point, uncontested facts support that Gustafson made material misstatements in his May application. Dr. Scott testified in his deposition that he personally diagnosed Gustafson with lung cancer on April 12, 1993. However, Gustafson's May 1993 application does not reveal Dr. Scott's diagnosis in response to the direct question whether the insured had ever been diagnosed with cancer. The omission constitutes a material misrepresentation.

dant claims that the $150,000.00 policy is unenforceable because Gustafson failed to meet certain conditions precedent. Defendant claims that Gustafson created express conditions precedent in the declarations contained in his February 1993 application. As stated by the Virginia Supreme Court,

"A condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect." *Morotock Ins. Co. v. Fostoria Novelty [Glass] Co.*, 94 Va. 361, 365, 26 S.E. 850, 851 (1897). In other words, "the contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event occurs." *Id.*, 26 S.E. at 852.

*Smith v. McGregor*, 237 Va. 66, 75, 376 S.E.2d 60, 65 (1989).

In particular, the $150,000.00 policy contained the following language:

The insurance applied for in this application shall not take effect until:

1 this application has been approved by Southland Life, and

2 the policy has been delivered to and accepted by the Owner, and

3 the first full premium, according to the rates stated in the policy, has been paid while all persons proposed for insurance are alive and while the *health and insurability* of such persons has not changed from that as described in this application.

Def.'s Ex A. *Declarations* ¶ 2(g)[2] (emphasis added). This language established three conditions precedent to the formation of the $150,000.00 policy. The parties agree that the first two, acceptance and delivery of the policy, were fulfilled.

The parties contest whether Plaintiff satisfied the third condition precedent: the condition that the first full premium be paid, "while the health and insurability of [the proposed insured] has not changed from that

described in [the] application." Def.'s Ex A. *Declarations* ¶ 2(g)3. Consequently, the Court must construe the meaning of this condition precedent to determine whether Gustafson experienced change in "health and insurability" about which he was aware at the time he paid his first premium. To determine the meaning of this phrase, "[t]he court must read the contract as a single document, the meaning of which is gathered from all of its associated parts when assembled as the unitary expression of the agreement of the parties." *See Quesenberry v. Nichols*, 208 Va. 667, 670, 159 S.E.2d 636, 638 (1968) (interpreting meaning of "non-owned automobile" in auto insurance policy based on terms of auto insurance document); *Management Enters. Inc. v. Thorncroft, Co.*, 243 Va. 469, 472, 416 S.E.2d 229, 231 (1992) (construing writing as "repository" of the final agreement of the parties). In the "Health Statement" portion of the application, the following questions appear:

1. To the best of your knowledge, has any person proposed for insurance had or been told by a physician that he or she had:

\*     \*     \*     \*     \*     \*

b. Chest pain, pulse irregularity, high blood pressure, rheumatic fever, heart murmur, heart attack, stroke, or other disorder of the heart, or circulatory system, anemia, or other disorder of the blood?

\*     \*     \*     \*     \*     \*

h. Cancer or tumor, collagen disease or any other disorder not listed above?

2. To the best of your knowledge has any person proposed for insurance ...

a. Other than above, had examination, treatment, or consultation with a physician during the past five years?

\*     \*     \*     \*     \*     \*

g. Been advised to have any diagnostic test, hospitalization or surgery which has not been completed?

---

2. The insurance policy rephrases the language in ¶ 2(g)3 of the application regarding the first full premium:

The first premium is due on the issue date. The policy will not take effect until it has been delivered and the first premium paid while the insured person is alive and prior to any change in health as shown in the application.

*See* Def.'s Ex. K at 7.

Def.'s Ex. A. These questions indicate what comprises "health and insurability." Consequently, a change in the answer to one of these questions would constitute a change in "health and insurability" as described in the application.

At the time Gustafson completed his application in February of 1993, he answered the questions in the application truthfully. However, certain events, which occurred after Gustafson completed his application, changed the accuracy of his answers. As early as March 26, 1993, Dr. Monti informed Gustafson that he had an abnormal chest x-ray and that he urgently needed to see a pulmonary doctor. On March 29, 1995, Gustafson visited Dr. Scott and underwent blood tests and a chest x-ray.

Had these events occurred before Gustafson had completed his application for $150,000.00 coverage, the answers to the above questions on the application would have changed. Specifically, Gustafson would have to have reported on his application the visits with Doctors Monti and Scott, the diagnostic tests he received including the blood tests and the chest scan, as well as Dr. Scott's recommendation that he have a bronchoscopy. Based on these events, the Court finds that Gustafson failed to disclose a change in his "health and insurability," and by his failure, he did not fulfill a condition precedent to the $150,000.00 policy.

The conclusion of this Court is supported by the Fourth Circuit's opinion in *Combs v. Equitable Life Ins. Co.*, 120 F.2d 432, 438 (4th Cir.1941). In *Combs*, the insured applied for life insurance, and after he completed the application, but before the insurer issued the policy, the insured learned that he had a lung condition, bronchiectasis. *Id.* at 434. The Fourth Circuit upheld the district court's conclusion that the insured's failure to inform the insurer of the change in his "good health" constituted a failure to fulfill a condition precedent. *Id.* at 436, 437.

In *Combs*, in order to determine whether the insured experienced a change in his "good health," the Fourth Circuit construed the meaning of that phrase in the insurance policy according to its "common and ordinary sense" meaning. *Id.* at 436. Although the *Combs* case involved a change in "good health" and the contested policy in the case at bar entails a change in Gustafson's "health and insurability," the two phrases have similar meanings. In *Combs*, the fact that the insured was diagnosed with bronchiectasis between the time he completed his application and the time that the policy became effective constituted a change in the insured's "good health." Similarly, although Gustafson had not yet been formally diagnosed as in *Combs*, he nevertheless knew of significant changes in his health through his awareness of the abnormal chest x-ray, through Dr. Monti's recommendation that he see a pulmonologist, and through the various diagnostic tests he received. As in the *Combs* case, Gustafson experienced a change in his physical condition about which he was aware; in other words, Gustafson experienced a change in his "health and insurability."

The Court rejects Plaintiff's argument that Gustafson had lung cancer at the time he completed his application, and therefore, no change occurred between that time and the time he paid his first premium. *See Combs*, 120 F.2d at 435, 436. In *Combs*, the Fourth Circuit rejected this same argument when the plaintiff presented it. *Id.* In *Combs*, the Fourth Circuit construed the decedent's "good health" to "impl[y] a state of health unimpaired by any serious malady of which the *person himself is conscious." Id.* at 436 (emphasis added). Consequently, Gustafson's "health and insurability" does not refer to the literal, objective state of his health about which he was unaware, but instead it applies to Gustafson's health measured by the responses given to the inquiries contained in the application. *See id.* at 436.

▮ Defendant also claims that Plaintiff had a duty of fair dealing to reveal the change in his medical condition. *See Home Ins. Co. v. Berry*, 175 Va. 447, 451, 9 S.E.2d 290, 292 (1940); *Combs*, 120 F.2d at 437–38 (relying on *Stipcich v. Metropolitan Life Ins. Co.*, 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928)). In *Berry*, the insured sought to have the insurer pay on a fire insurance policy; however, the policy contained a provision which voided it if foreclosure proceedings were commenced on the property. *Ber-*

*ry,* 175 Va. at 451, 9 S.E.2d at 292. Because the insured had not revealed to the insurer that foreclosure proceedings had begun, as the policy required him to do, such withholding of information prevented the insured from recovering on the policy. *Id.* In *Combs,* the Fourth Circuit concluded that the insured had a duty to "make a full disclosure before accepting the policy, because the condition under which the application was made has changed, and he is now aware of an infirmity of which he had no knowledge in the beginning." 120 F.2d at 438. However, this duty of fair dealing does not extend to every risk which the insurer undertakes. *See Insurance Co. of North America v. U.S. Gypsum Co.,* 870 F.2d 148, 153 (4th Cir. 1989).

In the case at bar, the fact that the insurance application requested answers to specific questions and the fact that the application required the decedent to disclose any changes in those answers before paying the first premium established a duty of fair dealing to reveal any changed answers. Therefore, notwithstanding the Court's finding that Gustafson did not fulfill a condition precedent to the $150,000.00 policy, Gustafson also had a duty of fair dealing, which required him to reveal the change in his condition to the insurer under *Berry* and *Combs. See Berry,* 175 Va. at 451, 9 S.E.2d at 292; *Combs,* 120 F.2d at 437–38. Gustafson's failure to make this disclosure further allows Defendant to deny payment on the $150,000.00 policy. *See Combs,* 120 F.2d at 438 (quoting *Stipcich,* 277 U.S. at 315–17, 48 S.Ct. at 513–14).

### *IV. Conclusion*

There being no material facts in dispute, because the Court finds that a single contract, the $250,000.00 policy exists, that Gustafson defrauded Southland, and that the parties mutually assented to modify the "Change in Coverage" clause, the Court GRANTS summary judgment for Defendant as a matter of law. Alternatively, even assuming *arguendo* that the $150,000.00 policy still exists, the Court finds that the declarations contained in Gustafson's application create conditions precedent to the $150,000.00 policy and uncontested facts support

that Gustafson did not meet one of these conditions precedent by failing to disclose a change in his "health and insurability" about which he knew. Accordingly, the Court would likewise GRANT summary judgment for Defendant as a matter of law on the first $150,000.00 policy.

IT IS SO ORDERED.